LOWRY v SINAI HOSPITAL OF DETROIT

Docket No. 62515. Submitted December 13, 1982, at Detroit.—Decided October 3, 1983. Leave to appeal granted, 418 Mich 958.

Plaintiff, Rosemary Lowry, was an employee of defendant, Sinai Hospital of Detroit. She married a man employed in the same department. Defendant had a rule prohibiting spouses from working in the same department at the same time. Plaintiff transferred to a lesser paying job in another department, but, because she could not receive merit increases or promotions, she quit. Plaintiff brought an action against defendant in the Wayne Circuit Court, alleging a violation of the Elliott-Larsen Civil Rights Act. The court, Patrick J. Duggan, J., granted summary judgment for defendant. Plaintiff appealed. *Held:*

The Elliott-Larsen Civil Rights Act prohibits employment discrimination because of marital status. Marital status refers to the position of being single, married, separated, divorced or widowed. Defendant's antinepotism policy focuses not on the marital status of an employee or prospective employee but, rather, on his or her familial relationship to other employees within the same unit or department. The majority of the panel felt that the act does not prohibit the type of antinepotism policy found in this case. However, the judges of the Court of Appeals have unanimously agreed to a procedure to secure and maintain uniformity of decisions. Since *Miller v C A Muer Corp,* 124 Mich App 780 (1983), was decided to the contrary, the issue was put to a vote of all the judges, who have agreed to follow the *Miller v C A Muer Corp* case as precedent. Therefore, an employer's rule that spouses may not work in the same department at the same time is prohibited by the Elliott-Larsen Civil Rights Act unless the employer can show that such discrimination is a bona fide occupational qualification reasonably necessary to the normal operation of the business.

Reversed and remanded.

DANHOF, C.J., concurred with the reasoning in *Miller v C A Muer Corp, supra.*

REFERENCE FOR POINTS IN HEADNOTE
15 Am Jur 2d, Civil Rights § 175.5.

CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — "NO-SPOUSE" RULE.
    An employer's rule that spouses may not work in the same
    department at the same time is prohibited by the Elliott-Larsen
    Civil Rights Act unless the employer can show that such
    discrimination is a bona fide occupational qualification reason-
    ably necessary to the normal operation of the business (MCL
    37.2202, 37.2208; MSA 3.548[202], 3.548[208]).

*Plunkett, Cooney, Rutt, Watters, Stanczyk &
Pedersen, P.C.* (by *John P. Jacobs*), for plaintiff.

*Honigman, Miller, Schwartz & Cohn* (by *A. Da-
vid Mikesell*), for defendant.

Before: DANHOF, C.J., and J. H. GILLIS and H. E.
DEMING,* JJ.

J. H. GILLIS, J. Plaintiff appeals as of right from
an order granting summary judgment in defen-
dant's favor pursuant to GCR 1963, 117.2(1).

In November, 1977, plaintiff was hired by defen-
dant and satisfactorily performed the duties of her
job as a security officer. In August, 1979, plaintiff
married William Lowry, who was also employed by
defendant as a security officer. After her marriage,
plaintiff was reminded that hospital personnel
policy[1] prohibited spouses from working in the
same department at the same time, and she or her

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Defendant's personnel policy stated in pertinent part:

"It is the policy of Sinai Hospital to consider filling vacant positions
with qualified applicants including relatives of employees when the
qualifications of such related applicants at least equal those of other
applicants who are applying, in accordance with the provisions and
procedures outlined below, providing such placements are in depart-
ments where their relatives are not working.

* * *

"Relatives are defined for purposes of this policy as only:
"Natural or Step
-Father/Mother              Spouse
-Son/Daughter               Grandparents
-Brother/Sister             Legal Guardians

* * *

husband was required to terminate employment or
transfer to another department. In December,
1979, plaintiff transferred to a lesser-paying job in
another department. Because she could not receive
merit increases or be promoted from that position,
plaintiff left defendant's employment in August,
1980. Shortly thereafter, plaintiff filed this employ-
ment discrimination action under the Elliott-Lar-
sen Civil Rights Act,[2] alleging that she had been
constructively discharged for reasons related to
her marital status.

The issue is whether defendant's antinepotism
policy, as applied to plaintiff, constitutes "marital
status" discrimination within the meaning of MCL
37.2202; MSA 3.548(202), which provides:

"An employer shall not:
"(a) Fail or refuse to hire, or recruit, or discharge, or
otherwise discriminate against an individual with re-
spect to employment compensation, or a term, condi-
tion, or privilege of employment, because of religion,
race, color, national origin, age, sex, height, weight, or
marital status.
"(b) Limit, segregate, or classify an employee or appli-
cant for employment in a way which deprives or tends
to deprive the employee or applicant of an employment
opportunity, or otherwise adversely affects the status of
an employee or applicant because of religion, race,
color, national origin, age, sex, height, weight, or mari-
tal status."

We hold that it does not.

"No Department Head/Supervisor can have his relatives working
in his department except with the written prior approval, which will
be filed in the employee's personnel file, of the Hospital Administra-
tor.
"When two employees in the same unit/department get married,
one of the employees will be transferred to another unit/department
as soon as possible."

[2] Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA
3.548(101) *et seq.*

Since the term "marital status" is not defined in the act, it is the Court's responsibility to interpret the statute and, in doing so, the object is to ascertain and give effect to the legislative intent. *City of Lansing v Lansing Twp,* 356 Mich 641, 648; 97 NW2d 804 (1959); *Smith v Elliard,* 110 Mich App 25, 29; 312 NW2d 161 (1981), *lv den* 413 Mich 944 (1982). To ascertain intent, the Court will review the specific language of the provision, giving all terms their plain and ordinary meaning absent a contrary legislative intent. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 110; 252 NW2d 818 (1977); *Smith v Elliard, supra.*

In ordinary usage, the term "status" refers to one's standing or position.[3] "Marital status", then, refers to one's position of being single, married, separated, divorced or widowed. In *Klanseck v Prudential Ins Co of America,* 509 F Supp 13, 18 (ED Mich, 1980), Judge Thornton found that an employer's policy of prohibiting two persons who are married to each other from both being district agents did not violate the Elliott-Larsen Civil Rights Act. The court found a clear distinction between marital status and marital relationship:

"This Court believes there is merit to the argument that the company policy herein at issue is not one of discrimination because of 'marital status.' The policy does not come into play by virute of a person getting married and assuming the status of a married person. It only comes into play if the marriage is between two District Agents. That *who* you are married to rather than *if* you are married is a significant distinction in evaluating discrimination because of marital status is well supported by respectable case law. [Citations omitted.] The identity and occupation of a spouse is a far cry from the fact of his/her existence. The statute herein

---

[3] *Webster's New World Dictionary* (2d ed); Black's Law Dictionary (Rev 4th ed, 1968), p 1580.

prohibits discrimination on the basis of the existence or
nonexistence of a spouse. It says nothing about discrimi-
nation because of a spouse having the same employer as
the employee. It appears to this Court that defendant's
nonspousal policy is not violative of the Michigan stat-
ute at issue herein."

Accord: *Thompson v Sanborn's Motor Express, Inc,*
154 NJ Super 555; 382 A2d 53 (1977); *Manhattan
Pizza Hut, Inc v New York State Human Rights
Appeal Board,* 51 NY2d 506; 434 NYS2d 961; 415
NE2d 950 (1980).

Defendant's antinepotism policy focuses not on
the marital status of an employee or prospective
employee but, rather, on his or her familial rela-
tionship to other employees within the same unit
or department.

As the statute is written, we can discern no
legislative intent to prohibit the type of antinepo-
tism regulation here involved.

The judges of the Court of Appeals have unani-
mously agreed to a procedure to secure and main-
tain uniformity of decisions. Pursuant to such
procedure,[4] the judges have agreed to follow *Miller*

---

[4] The procedure for uniformity of decision is stated as follows:

CONFLICTING OPINIONS. If a panel of the Court of Appeals agrees
upon an opinion which is in conflict with a prior published opinion of
the Court of Appeals, the presiding judge shall immediately inform
the Chief Judge and the Chief Clerk. If the Chief Judge agrees there
is a conflict:

(1) The chief clerk shall

(a) withhold the filing and release of the opinion which is in conflict
with the prior opinion.

(b) immediately submit to each judge of the Court of Appeals copies
of the two opinions and the briefs and internal court documents in
both appeals.

(2) Each judge of the Court of Appeals shall, within 21 days of the
date of the clerk's submission, furnish in writing to the Chief Judge a
vote to follow one of the two opinions. Each judge shall vote unless
disqualified by law or court rule. No judge sitting by assignment may
participate in the vote.

(3) The Chief Judge shall sign and furnish to the Chief Clerk a list
of the votes of all of the judges.

*v C A Muer Corp,* 124 Mich App 780; 336 NW2d 215 (1983) as precedent as opposed to the views expressed in the instant opinion. Accordingly, we follow *Miller v C A Muer Corp.*

Reversed and remanded to the trial court for further proceedings.

H. E. Deming, J., concurred.

Danhof, C.J. *(concurring).* I concur in reversal of the instant case for the reasons stated in *Miller v C A Muer Corp,* 124 Mich App 780; 336 NW2d 215 (1983).

---

(4) If at least ten judges of the Court of Appeals vote to follow the second opinion, the Chief Clerk shall file it together with the votes of the individual judges and release the opinion to the parties. If at least ten judges of the Court of Appeals vote to follow the prior opinion, the panel which wrote the opinion in conflict with it shall revise the holding of their opinion to conform with the holding of the prior opinion. Thereafter, the second opinion and the votes of the individual judges shall be published by the state reporter.

(5) Thereafter the holding of the opinion receiving at least ten votes shall be binding precedent on all panels of the Court of Appeals and on all lower courts until changed by the Supreme Court.

Votes cast by the individual judges are as follows: For the *Miller v C A Muer Corp* opinion, Judges Danhof, T. M. Burns, Allen, D. E. Holbrook, Jr., Kelly, Maher, Cynar, MacKenzie, Wahls and Hood. For the *Lowry v Sinai Hospital* opinion, Judges R. B. Burns, J. H. Gillis, V. J. Brennan, Bronson, Walsh, Beasley and Gribbs. Judge Shepherd did not participate because his appointment to the Court occurred subsequent to the submission.