DeBRABANT v ROADWAY EXPRESS, INC*

Docket No. 70754. Submitted April 17, 1984, at Detroit.—Decided October 15, 1984. Rehearing granted and, following rehearing, decision vacated and judgment of circuit court affirmed, February 4, 1985.

Mary P. DeBrabant began working for Roadway Express, Inc., in 1972. She was employed in a clerical position. In 1973, she began living with Art DeBrabant, a part-time driver for Roadway. He became a full-time employee of Roadway in 1977. In 1978, Art and Mary were married. In 1979, a new terminal manager took over and informed Mary that she was being laid off because of her marriage to Art. She was notified in 1980 that she could return to work but only if her husband resigned his position as a driver. Mary filed suit against Roadway Express, Inc., and Gordon F. May, the terminal manager, in Oakland Circuit Court claiming that she was discriminatorily discharged by defendants on the basis of her marital status in violation of the Elliott-Larsen Civil Rights Act. Following a bench trial, the court, Robert C. Anderson, J., entered a judgment of no cause of action. Plaintiff appeals. *Held:*

1. Plaintiff's contention that the trial court erred in finding that defendant Roadway did not apply its policy in a discriminatory way is rejected. The court's finding of fact is not clearly erroneous.

2. Plaintiff's contention that defendants were bound by the previous terminal manager's failure to enforce the antinepotism policy is also rejected. Defendants acted with reasonably prompt dispatch upon discovering the violation of their policy.

3. Plaintiff's final contention, that defendant Roadway's antinepotism policy is invalid as a matter of law insofar as it is

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 839.
[2, 6] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[3, 4] 15 Am Jur 2d, Civil Rights §§ 158, 175.5.
[5] 15 Am Jur 2d, Civil Rights § 287.5.

* Rehearing was granted and, following rehearing, the Court of Appeals vacated its opinion and affirmed the judgment of the Oakland Circuit Court on February 4, 1985, based upon the Supreme Court's opinion in *Miller v C A Muer Corp* and *Lowry v Sinai Hosp of Detroit,* 420 Mich 355; 362 NW2d 650 (1985).—REPORTER.

applied to married persons, was not heard by the trial court because the parties had stipulated that the no-spouse rule was valid and that the only issue to be decided was whether it had been discriminatorily applied. That stipulation must be disregarded since it is against public policy for parties to agree that an unlawful act of discrimination is valid. The case must be remanded to the trial court for an evidentiary hearing on the question of whether there was a business necessity for defendant Roadway's antinepotism policy as applied to plaintiff. If there was a bona fide business necessity for application of the policy to plaintiff, there was no violation of the Elliott-Larsen Civil Rights Act. On remand, defendants have the burden of establishing by a preponderance of the evidence the reasonable necessity of the application of the policy to plaintiff. Absent such proof, judgment should be entered in favor of plaintiff.

Reversed and remanded.

W. J. Caprathe, J., concurred in part and dissented in part. He would not consider plaintiff's challenge to the validity of Roadway's antinepotism policy as it is applied to married persons since that issue was not raised at the trial level. He would affirm.

### Opinion of the Court

1. Appeal — Findings of Fact — Bench Trials — Court Rules.

   Findings of fact by a trial court in a nonjury trial will not be reversed on appeal unless clearly erroneous (GCR 1963, 517.1).

2. Appeal — Preserving Question.

   The rule that the Court of Appeals will not ordinarily consider an issue raised for the first time on appeal is not inflexible and will not be applied where consideration of the issue is necessary to a proper determination of the case or where the issue is one of law concerning which the necessary facts have been presented.

3. Civil Rights — Employment Discrimination — "No-Spouse" Rules.

   An employer's rule that spouses may not work in the same facility is prohibited by the Elliott-Larsen Civil Rights Act unless the employer can show that such discrimination is a bona fide occupational qualification reasonably necessary to the normal operation of the business (MCL 37.2208; MSA 3.548[208]).

4. Civil Rights — Actions — Stipulations — Public Policy.

   A stipulation between parties to a lawsuit that an unlawful act of discrimination is valid must be disregarded as such a stipulation is in violation of public policy.

5. Civil Rights — Elliott-Larsen Civil Rights Act — Employment

DISCRIMINATION — ANTINEPOTISM POLICIES — EMPLOYER'S BURDEN OF PROOF.

A challenged employer, under the Elliott-Larsen Civil Rights Act, has the burden of showing by a preponderance of the evidence the necessity of applying a presumptively invalid antinepotism policy to its employees (MCL 37.2208; MSA 3.548[208]).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY W. J. CAPRATHE, J.

6. APPEAL — PRESERVING QUESTION — STIPULATIONS.

A party who stipulates that an employer's antinepotism policy is valid should be precluded from challenging the validity of the policy on appeal where, as a result of the stipulation, the issue of the validity of the policy was not ruled on by the trial court.

*Hatchett, DeWalt, Hatchett & Hall* (by *Leland Prince),* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Martin Jay Galvin* and *Mark S. Demorest),* for defendants.

Before: SHEPHERD, P.J., and BEASLEY and W. J. CAPRATHE,** JJ.

SHEPHERD, P.J. Plaintiff appeals as of right from a judgment of no cause of action on her claim that she was discriminatorily discharged by defendants from her employment on the basis of marital status, contrary to the Elliott-Larsen Civil Rights Act, MCL 37.2202(1); MSA 3.548(202)(1), which prohibits employment discrimination based on marital status. Sitting without a jury, the trial judge found that plaintiff failed to meet her burden of proving that defendants applied their antinepotism rule to her in a discriminatory manner. We hold that the no-spouse portion of defendant Roadway's antinepotism rule is presumptively invalid and we remand for a new trial at which Roadway will have the burden of establishing that the application of the rule to plaintiff is reasonably necessary to the operation of its business.

Plaintiff began working for Roadway Express,

** Circuit judge, sitting on the Court of Appeals by assignment.

Inc., in 1972 in a clerical position. In 1973, she began living with Art DeBrabant, who was then a part-time driver for Roadway. In 1977, he became a full-time employee of Roadway. On August 10, 1978, plaintiff and DeBrabant were married. Paul Bresette, who was then the terminal manager in Pontiac where plaintiff and her husband worked, knew of the marriage.

Gordon May became terminal manager in July of 1979. On October 1, 1979, Mr. May informed plaintiff that she was being laid off because of her marriage. Until that day, she had never heard of Roadway's antinepotism policy. When she later spoke with Paul Bresette, he informed her that he had known about the rule and had placed his job in jeopardy by not enforcing it. Plaintiff was notified on May 17, 1980, that she could return to work on the condition that her husband resign his position as a driver. Plaintiff did not return to work at Roadway.

Clifton Jack Lewis became a driver for Roadway in 1976. Although his two sisters were married to two other Roadway drivers, he was instructed by then terminal manager Ed Rieke to state on the employment application that he had no relatives working at Roadway. He was not aware of any other sets of relatives employed by Roadway.

Francis Cahill, a district manager for Roadway, explained the antinepotism rule. First formulated in 1958, the rule forbade the hiring of office employees who were related by blood or marriage to any other employee in the same location. Thus, the rule forbade relationships between two office employees or between an office employee and a dock employee, but allowed relationships between two dock employees. In 1976, the rule was expanded to include relationships between dock employees and, in 1979, the rule was further ex-

panded to encompass an entire district rather than just one location. The rule was always enforced prospectively only.

When Cahill learned of the marriage of plaintiff and her husband, he told Paul Bresette to discharge one of them. Bresette was insubordinate and did not do as instructed. When Gordon May took over as terminal manager, Cahill told him that the DeBrabant situation was one of the things he would have to resolve. Before Mr. May had dealt with the situation, he was instructed that, for economic reasons, one office employee at the Pontiac terminal had to be laid off. He chose plaintiff. Cahill further testified that although there were two brothers employed by defendant Roadway in the same division, they began working there before the antinepotism rule was expanded.

When Gordon May became terminal manager in Pontiac, he did not take immediate action. When an economic layoff became necessary, he chose plaintiff because the supervisors were exempt from the overtime provisions of the Fair Labor Standards Act and plaintiff's duties could be taken over by one of the supervisors. May called plaintiff and her husband into his office because he wanted to tell them that when plaintiff was recalled they would have to decide which one of them would remain employed by Roadway. When the supervisor who took over plaintiff's duties was fired, it was possible to recall plaintiff. She chose not to return.

Mr. May personally never made an exception to the rule. He related several instances where people were turned down for employment because they had relatives working for Roadway. He also stated that the rule did not apply to the situation of Jack Lewis because he and his two brothers-in-law were not direct in-laws, in that they had

married three sisters. He was unable to give any information about another alleged relative-employee, Kathy Helms, other than that she was a part-time employee in 1972 and 1973.

The trial judge found no violation of the Elliott-Larsen act. He further concluded that defendants were in no way estopped from enforcing their policy by Paul Bresette's failure to apply it from the outset. Plaintiff did not challenge the legality of the antinepotism rule, per se, in the trial court.

Plaintiff raises three issues. First, she argues that the trial judge erred in finding that defendant Roadway did not apply its policy in a discriminatory way. We disagree. This Court cannot overturn this finding of fact unless it is clearly erroneous. GCR 1963, 517.1; *C Thorrez Ind, Inc v Civil Rights Comm,* 88 Mich App 704, 707; 278 NW2d 725 (1979). Our review of the record does not leave us with a definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). There was neither a showing that plaintiff's discharge resulted from anything other than her noncompliance with the policy, *Gallaway v Chrysler Corp,* 105 Mich App 1, 6; 306 NW2d 368 (1981), *lv den* 413 Mich 853 (1982), nor that she was treated differently than other employees who were similarly situated. *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 373; 263 NW2d 376 (1977).

Plaintiff next contends that defendants were bound by the previous manager's failure to enforce the policy. To the contrary, the record indicates that defendants acted with reasonably prompt dispatch upon discovering the violation of their policy, dismissing the manager and informing plaintiff that she and her husband would be forced to make a choice upon her recall. *Barnes v Costle,* 183 US App DC 90; 561 F2d 983 (1977).

Plaintiff's last argument, first raised on appeal, is that the antinepotism policy is invalid as a matter of law, insofar as it is applied to married persons, (*i.e.,* the "no spouse" component of the policy). *Miller v C A Muer Corp,* 124 Mich App 780; 336 NW2d 215 (1983), *lv gtd* 418 Mich 958 (1984); *Lowry v Sinai Hospital of Detroit,* 129 Mich App 726; 343 NW2d 1 (1983), *lv gtd* 418 Mich 958 (1984).

"While this Court will not ordinarily consider an issue raised for the first time on appeal, the rule is not inflexible and will not be applied where consideration of the issue is necessary to a proper determination of the case or where the issue is one of law concerning which the necessary facts have been presented." *Loper v Cascade Twp,* 135 Mich App 106, 111; 352 NW2d 357 (1984).

See, also, *Swartz v Dow Chemical Co,* 414 Mich 433, 446; 326 NW2d 804 (1982); *People v Snow,* 386 Mich 586, 591; 194 NW2d 314 (1972).

Given the decisions in *Miller, supra,* and *Lowry, supra,* disapproving of the no-spouse rule, and the defendants' admitted adherence to a "no spouse" rule as part of their antinepotism policy, both of the above requisites apply here. Accordingly, the policy is contrary to the Elliott-Larsen act, "unless the classification can qualify as a bona fide occupational qualification reasonably necessary to the normal operation of [defendants'] business". *Miller, supra,* p 784, citing MCL 37.2208; MSA 3.548(208). This issue was not litigated below since the parties had stipulated that the no-spouse rule was valid and that the only issue to be tried was whether it had been discriminatorily applied. Since the right to be free from unlawful discrimination in employment has been declared by the Legislature to be a civil right, MCL 37.2102(1);

MSA 3.548(102)(1), we hold that it is against public policy for parties to agree that an unlawful act of discrimination is valid. The stipulation must therefore be disregarded.

Defendants urge, and we agree, that since this issue was not litigated below they had no opportunity to establish the business necessity of the policy as applied to plaintiff. We therefore remand to the trial court for an evidentiary hearing on this question. Defendants "shall have the burden of establishing" the reasonable necessity of the application of the policy to plaintiff. MCL 37.2208. See, *Klanseck v Prudential Ins Co of America*, 509 F Supp 13 (ED Mich, 1981). As noted in *Washington Water Power Co v Washington State Human Rights Comm*, 91 Wash 2d 62, 68; 586 P2d 1149 (1978):

"[T]here may be situations in which this type of discrimination is justified for legitimate business reasons, as where one spouse supervises the other, or audits his or her work, or where the spouses are in direct or potential competition with each other."[1]

Nevertheless, we do not wish to sanction a *pro forma* hearing at which any hypothetical reason advanced by the employer in support of the policy is accepted as sufficient. *Yuhas v Libbey-Owens-Ford Co*, 562 F2d 496, 499 (CA 7, 1977). Rather, we reiterate that the burden is on defendants to show, by a preponderance of the evidence, the necessity of applying this presumptively invalid policy to

[1] We note that defendant Roadway had no objection to the plaintiff's and her husband's working for the company before the marriage even though they had been living together for a considerable period of time. It was the act of getting married which proved offensive. Although the significance of this fact will have to be weighed by the trial court, we believe that this ought to weigh heavily against defendants in establishing a legitimate business reason for the application of the no-spouse rule in this case.

the positions held by this plaintiff and her husband. Absent such proof, judgment should be entered for plaintiff.

Reversed and remanded for further proceedings.

We do not retain jurisdiction.

Costs to abide the final outcome.

Beasley, J., concurred.

W. J. Caprathe, J. *(concurring in part and dissenting in part).* I agree with the majority opinion on the facts as set forth and the results with respect to Issues I and II. I respectfully dissent, however, with respect to Issue III.

Plaintiff now contends, for the first time on appeal, that the antinepotism policy under which she was discharged per se violates the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* See *Lowry v Sinai Hospital of Detroit,* 129 Mich App 726; 343 NW2d 1 (1983), and *Miller v C A Muer Corp,* 124 Mich App 780; 336 NW2d 215 (1983). Not only did plaintiff fail to raise this issue during the four years between the time the suit was filed and the second time the case reached the Court of Appeals, but plaintiff conceded this issue when plaintiff's counsel expressly stipulated at trial that plaintiff's claim was based on disparate application of the antinepotism policy and not on a challenge to the policy per se under the Civil Rights act. See *Ass'n of Hebrew Teachers v Jewish Welfare Federation,* 62 Mich App 54; 233 NW2d 184 (1975), and *Donovan Construction Co v Dep't of Treasury,* 126 Mich App 11; 337 NW2d 297 (1983).

In view of plaintiff's failure to raise the issue prior to this appeal and the stipulation at trial, I do not believe this Court should consider plaintiff's per se challenge to defendant Roadway's antinepotism policy. Therefore, I would affirm.