MILLER v C A MUER CORPORATION

LOWRY v SINAI HOSPITAL OF DETROIT

Docket Nos. 71647, 72852. Argued October 3, 1984 (Calendar Nos. 9, 10).—Decided December 28, 1984.—Released January 15, 1985.

Curt Miller brought an action in the Wayne Circuit Court against C. A. Muer Corporation, alleging employment discrimination on the basis of marital status and seeking damages, a declaration that the defendant's antinepotism policy violated the Michigan civil rights act, and an injunction against the defendant's enforcing the policy. The court, Patrick J. Duggan, J., granted the defendant's motion for summary judgment, dismissing the action. The Court of Appeals, Wahls, P.J., and M. J. Kelly and Lambros, JJ., reversed, holding that construction of the term "marital status" in the civil rights act to include a prohibition against discriminatory employment practices based on the identity of a person's spouse would further the intent of the Legislature (Docket No. 60299). The defendant appeals.

Rosemary Lowry brought an action in the Wayne Circuit Court against Sinai Hospital of Detroit, alleging that the hospital's antinepotism policy in employment discriminated on the basis of marital status and seeking compensatory and exemplary damages as a result of the discrimination. The court, Patrick J. Duggan, J., relying on his opinion in *Miller*, granted the hospital's motion for summary judgment. The Court of Appeals, J. H. Gillis and Deming, JJ. (Danhof, C.J., concurring), reversed (Docket No. 62515). The defendant appeals.

In a unanimous opinion by Justice Levin, the Supreme Court *held*:

Antinepotism policies promulgated by the employers in these cases which were applicable to the employment of relatives, including spouses, did not facially discriminate on the basis of marital status within the meaning of the Michigan civil rights act, but remand is required to determine whether impermissible discrimination occurred in the application of the policies.

1. The Michigan civil rights act prohibits employment dis-

REFERENCE FOR POINTS IN HEADNOTES
[1-4] 15 Am Jur 2d, Civil Rights §§ 175.5, 176.

crimination on the basis of a person's marital status. The term "marital status" is not defined in the act. The Legislature did not intend, however, that the term should include the identity, occupation, and place of employment of a person's spouse. The act is aimed at discrimination based on the prejudices and biases borne against persons because of their membership in a certain class, and seeks to eliminate the effect of offensive or demeaning stereotypes, prejudices, and biases. By including marital status as a protected class, the Legislature intended to prohibit discrimination based on whether a person is married. To include identity, occupation, and place of employment of one's spouse within the definition of marital status could enlarge the protected class to include all married persons who desire to work with their spouse, invalidating most antinepotism policies. Absent a more specific manifestation of legislative intent, the prohibition of employment discrimination on the basis of marital status does not protect a right to be employed in the same department as one's spouse.

2. The antinepotism policies in these cases, by their terms, do not discriminate on the basis of a person's marital status. In Lowry, the policy applies to other relatives of an employee in addition to a spouse, and neither policy facially treats employees differently on the basis of marital status; nor is there a facial indication of an adverse effect upon employees on that basis. While the policies may require co-workers who desire to marry to confront serious and difficult choices, they do not directly and substantially infringe on the employee's right to marry. Thus, review of the policies does not require strict scrutiny.

3. The finding that the policies do not facially discriminate on the basis of marital status does not preclude a finding that the plaintiffs suffered discrimination as a result of the application of the policies. However, because summary judgments were entered and there are no factual records concerning application of the policies, remand is required for further proceedings.

Reversed and remanded.

124 Mich App 780; 336 NW2d 215 (1983) reversed.

129 Mich App 726; 343 NW2d 1 (1983) reversed.

1. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — ANTINEPOTISM POLICIES.

Antinepotism policies that were applicable to employment of relatives, including spouses, did not facially discriminate on the basis of marital status within the meaning of the Michigan civil rights act (MCL 37.2202; MSA 3.548[202]).

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — MARITAL STATUS.

An employer may not discriminate against an employee on the basis of the employee's marital status; however, the term "marital status" does not include the identity, occupation, and place of employment of a person's spouse and does not provide a right to be employed in the same department as one's spouse (MCL 37.2202; MSA 3.548[202]).

3. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — ANTINEPOTISM POLICIES.

A finding that antinepotism policies of certain employers did not facially discriminate against employees on the basis of marital status within the meaning of the Michigan civil rights act would not preclude a finding that discrimination could have been suffered as a result of the application of the policies (MCL 37.2202; MSA 3.548[202]).

4. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — ANTINEPOTISM POLICIES — REVIEW.

Antinepotism policies that did not directly and substantially infringe on employees' rights to marry did not require review under a strict scrutiny standard.

*Fieger & Fieger, P.C.* (by *Geoffrey N. Fieger),* for plaintiff Miller.

*Karl R. Bennett, Jr., P.C.* (by *Karl R. Bennett, Jr.),* for defendant C. A. Muer Corporation.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *John P. Jacobs),* for plaintiff Lowry.

*Honigman, Miller, Schwartz & Cohn* (by *A. David Mikesell)* for defendant Sinai Hospital of Detroit.

LEVIN, J. In these cases, consolidated on appeal, the defendant employers promulgated antinepotism policies applicable to the employment of rela-

tives, including spouses.[1] The principal question is whether the policies impermissibly discriminate on the basis of "marital status" within the meaning of § 202 of the Michigan civil rights act.[2] We hold that the policies are not *facially* discriminatory. We remand, however, for further consideration because impermissible discrimination may occur in the *application* of a policy not facially discriminatory.

A

Plaintiff Curt Miller worked as a waiter at a restaurant operated by defendant C. A. Muer Corporation. Miller became engaged to a woman who worked as a waitress at the same restaurant. When Miller told the restaurant manager of his marriage plans, the manager informed him of the company's policy[3] that prohibited a husband and wife from working in the same restaurant. Miller was told that after his marriage he would be required to choose between quitting his employ-

---

[1] The antinepotism policies at issue in the instant cases, which facially are applicable to several familial relationships, must be distinguished from "no-spouse rules" which apply to married couples only. We express no opinion on the validity of no-spouse rules.

[2] "(1) An employer shall not:

"(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

"(b) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202; MSA 3.548(202).

[3] The policy states:

"EMPLOYMENT OF RELATIVES—No husband and wife nor any relatives (natural or through marriage) may work in the same restaurant. As past experience has proven, this causes undue strain on all parties concerned."

ment, being discharged, or being transferred to another restaurant operated by Muer. Miller quit his employment in apparent response to the restaurant's policy. Subsequently, he commenced this action alleging employment discrimination on the basis of marital status and seeking damages and declaratory and injunctive relief.

The circuit judge granted Muer's motion for summary judgment stating that "discrimination based on marital status means discrimination based on 'the existence or non-existence of a spouse.'" The Court of Appeals reversed stating that "[t]he Legislature's intent would be furthered by construing the term 'marital status' to include a prohibition against discriminatory employment practices based on the identity of one's spouse." *Miller v C A Muer Corp,* 124 Mich App 780, 784; 336 NW2d 215 (1983).

## B

Plaintiff Rosemary Lowry was employed as a security officer by defendant Sinai Hospital of Detroit. She married William Lowry who also was a security officer employed by Sinai Hospital. Shortly after their marriage, the Lowrys were told that hospital policy[4] required that one of them leave the employment or transfer to another de-

---

[4] The policy states, in relevant part:

"1.1 It is the policy of Sinai Hospital to consider filling vacant positions with qualified applicants including relatives of employees when the qualifications of such related applicants at least equal those of other applicants who are applying, in accordance with the provisions and procedures outlined below, providing such placements are in departments where their relatives are not working.

"2.1 Relatives are defined for purposes of this policy as only:

"2.1.1  Natural or Step      Spouse
        —Father/Mother       Grandparents
        —Son/Daughter        Legal Guardians
        —Brother/Sister

\*   \*   \*

partment. Approximately four months after the marriage, Rosemary Lowry transferred to a different department where she received lower hourly compensation without the possibility of merit increases or promotion. She quit her employment approximately eight months after the transfer. Subsequently, she commenced this action alleging that the hospital's policy discriminated on the basis of marital status and seeking compensatory and exemplary damages.

The circuit judge, relying on his earlier opinion

"3.1 No Department Head/Supervisor can have his relatives working in his department except with the written prior approval, which will be filed in the employee's personnel file, of the Hospital Administrator.

"3.2 When two employees in the same unit/department get married, one of the employees will be transferred to another unit/department as soon as possible.

"3.3 When relatives are already employed in the Hospital prior to the effective date of this policy and would not have been employed if this policy had been in force, such applicable provisions will be waived.

"3.3.1 However, this waiver of the policy is not to be considered as an exception nor used as a basis for further exceptions subsequent to the effective date of this policy.

"3.4 There will be no special consideration or preference given to employees based on the fact they are related to other employees for purposes of promotions, transfers, reduction of workforce, necessity for administering disciplinary actions, or any other personnel or administrative policies or directives.

"3.4.1 Relatives can only be considered for promotion, transfer, etc. to departments under the jurisdiction of a Department Head different from that of the employed relative. Where this is not possible, the Director of Employee Services, or Director of Personnel, will make a recommendation regarding the situation to the Hospital Administrator for his approval.

\* \* \*

"4.2 It is anticipated that exceptions will not be necessary to the provisions of this policy. However, if it is felt that a hardship will be created in a department because of the application of this policy and/or that an injustice is being done to an employee because he is a relative, a written request must be made to the Director of Employee Services, or Director of Personnel, by the Department Head explaining in detail the reasons for such a request, which will be filed in the employee's personnel file. After reviewing the request, the Director of Employee Services, or Director of Personnel, will submit his recommendation to the Hospital Administrator for consideration."

in *Miller*,[5] granted the hospital's motion for summary judgment. The Court of Appeals affirmed in a divided opinion; the cause was submitted to the entire Court, and a majority voted to follow the opinion issued in *Miller* and reverse the decision of the circuit judge. *Lowry v Sinai Hospital of Detroit,* 129 Mich App 726; 343 NW2d 1 (1983) *(en banc).*

## C

In both *Miller* and *Lowry* we reverse the judgment of the Court of Appeals and remand to the circuit court for further proceedings.

## I

The validity of antinepotism and no-spouse policies has been consistently sustained when challenged under Title VII of the Civil Rights Act of 1964, 42 USC 2000e-2.[6] The Michigan civil rights act, however, in contrast with the federal act, prohibits employment discrimination on the basis of a person's marital status.

## A

The Legislature did not define the term "marital status" in the civil rights act. It has been said that the term means "whether one is married or not

---

[5] The opinion of the Court of Appeals reversing in *Miller* was issued after the circuit judge granted summary judgment in *Lowry.*

[6] See, *e.g., Harper v Trans World Air Lines,* 525 F2d 409 (CA 8, 1975); *Yuhas v Libbey-Owens-Ford Co,* 562 F2d 496 (CA 7, 1977), *cert den* 435 US 934 (1978); *Meier v Evansville-Vanderburgh School Corp,* 416 F Supp 748 (SD Ind, 1975), *aff'd* 539 F2d 713 (CA 7, 1976); *Tuck v McGraw-Hill, Inc,* 421 F Supp 39 (SD NY, 1976).

See generally Schlei & Grossman, Employment Discrimination Law (2d ed), pp 410, 573-574; Alley, *Marital Status Discrimination: An Amorphous Prohibition,* 54 Fla B J 217, 218 (1980); Anno: *Distinctions Based on Marital Status as Constituting Sex Discrimination Under § 703(a) of Civil Rights Act of 1964,* 34 ALR Fed 648 (1977).

married," *Maryland Comm on Human Relations v Greenbelt Homes, Inc,* 300 Md 75, 83; 475 A2d 1192 (1984), or "the social condition enjoyed by an individual by reason of his or her having participated or failed to participate in a marriage," *Manhattan Pizza Hut, Inc v New York State Human Rights Appeal Board,* 51 NY2d 506, 511; 434 NYS2d 961; 415 NE2d 950 (1980). The usual answer to a query about one's marital status is "married," "single," "divorced," "widowed," or "separated." *Id.,* pp 511-512. The relevant inquiry is *if* one is married rather than *to whom* one is married. *Klanseck v Prudential Ins Co of America,* 509 F Supp 13, 18 (ED Mich, 1980) (supplemental memorandum opinion issued February 26, 1981).

In the context of challenges to antinepotism or no-spouse policies, a number of courts have construed "marital status" to mean whether or not one is married.[7] Other courts, including the Court of Appeals in the instant cases, have adopted more expansive definitions to further their perceptions of legislative purpose and intent.[8] We are persuaded, however, that the Legislature did not intend that the term "marital status" include the identity, occupation, and place of employment of one's spouse.

Civil rights acts seek to prevent discrimination against a person because of stereotyped impressions about the characteristics of a class to which

---

[7] *Thomson v Sanborn's Motor Express, Inc,* 154 NJ Super 555; 382 A2d 53 (1977); *Klanseck v Prudential Ins Co of America,* 509 F Supp 13 (ED Mich, 1980); *Manhattan Pizza Hut, Inc v New York State Human Rights Appeal Board,* 51 NY2d 506; 434 NYS2d 961; 415 NE2d 950 (1980); *Moore v Honeywell Information Systems, Inc,* 558 F Supp 1229 (D Hawaii, 1983).

[8] *Washington Water Power Co v Washington State Human Rights Comm,* 91 Wash 2d 62; 586 P2d 1149 (1978); *Kraft, Inc v State,* 284 NW2d 386 (Minn, 1979); *Thompson v Bd of Trustees, School Dist No 12, Harlem, Blaine County,* 627 P2d 1229 (Mont, 1981).

the person belongs.[9] The Michigan civil rights act is aimed at "the prejudices and biases" borne against persons because of their membership in a certain class, *Boscaglia v Michigan Bell Telephone Co,* 420 Mich 308, 316; 362 NW2d 642 (1984); *Freeman v Kelvinator, Inc,* 469 F Supp 999, 1000 (ED Mich, 1979), and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases.

By including marital status as a protected class, the Legislature manifested its intent to prohibit discrimination based on *whether* a person is married. To include the identity, occupation, and place of employment of one's spouse within the definition of "marital status" might enlarge the protected class to include all married persons who desire to work with their spouse.[10] Such a construction would invalidate most antinepotism policies.

Some of the reasons advanced in justification of antinepotism policies include potential emotional interference with job performance, collusion in grievance disputes, favoritism, morale problems resulting from the appearance of favoritism, and conflicts of interest that arise if an employee is required to supervise the employee's spouse.[11] Whether these reasons are valid in all circum-

[9] *City of Los Angeles v Manhart,* 435 US 702, 708; 98 S Ct 1370; 55 L Ed 2d 657 (1978) (Title VII).

[10] Such an expansive construction of "marital status" would also include in the protected class an employee whose wife is the chief executive officer of his employer's major competitor. We do not wish to be understood as saying that an employer should *not* hire a close relative of one of its competitors' employees; we conclude only that the Legislature did not *require* an employer to make all personnel decisions without regard to the identity of an employee's spouse. See *Emory v Georgia Hospital Service Ass'n,* 4 FEP Cases 891 (MD Ga, 1971), *aff'd* 446 F2d 897 (CA 5, 1971).

[11] See *Yuhas v Libbey-Owens-Ford Co,* 562 F2d 496, 499 (CA 7, 1977), *cert den* 435 US 934 (1978); *Keckeisen v Independent School Dist 612,* 509 F2d 1062, 1066 (CA 8, 1975), *cert den* 423 US 833 (1975); *Cutts v Fowler,* 223 US App DC 414, 417; 692 F2d 138 (1982). See also Alley, *Marital Status Discrimination,* fn 6 *supra.*

stances or not, they do not appear to reflect offensive or demeaning stereotypes, prejudices, or biases. Absent a more specific manifestation of legislative intent, we conclude that the prohibition of employment discrimination on the basis of "marital status" was not meant to protect a right to be employed in the same department as one's spouse.

## B

The instant antinepotism policies do not, in terms, discriminate on the basis of whether a person is married. In *Miller,* the policy applies to "any relatives (natural or through marriage)." In *Lowry,* the policy applies to parents, children, siblings, spouses, grandparents, and legal guardians. Neither of these policies facially treats employees differently on the basis of whether they are married, nor is there any facial indication of an adverse effect upon married, single, divorced, separated, or widowed employees.

## C

Miller and Lowry claim that the instant antinepotism policies interfere with their fundamental right to marry and that such interference violates their rights of privacy, freedom of choice, due process, and equal protection under the First, Fifth, and Fourteenth Amendments to the United States Constitution.[12] They urge that we adopt a standard of "strict scrutiny" when reviewing the validity of antinepotism policies.[13]

[12] See also Const 1963, art 1, §§ 2, 17.

[13] Miller and Lowry make no "state action" argument and, thus, do not seek redress for a direct violation of their constitutional rights. They ask only that we consider the fundamental nature of the right to marry in determining whether the term "marital status" should be construed to include the identity, occupation, and place of employment of one's spouse.

In confronting similar arguments, federal courts have applied a "rational basis" test and have upheld antinepotism policies against constitutional challenges.[14] The United States Supreme Court has indeed said that the freedom to marry is a "vital personal right." *Loving v Virginia,* 388 US 1, 12; 87 S Ct 1817; 18 L Ed 2d 1010 (1967). The antinepotism policies in the instant cases, however, do not prohibit marriage or deny co-workers the right to marry. Not every regulation that "relates in any way to the incidents of * * * marriage must be subjected to rigorous scrutiny;" such scrutiny is applicable when regulations "interfere directly and substantially with the right to marry." *Zablocki v Redhail,* 434 US 374, 386-387; 98 S Ct 673; 54 L Ed 2d 618 (1978). Antinepotism policies may require co-workers who desire to marry to confront serious and difficult choices. Such policies do not, however, infringe on the right to marry "directly and substantially." See *Parsons v County of Del Norte,* 728 F2d 1234, 1237 (CA 9, 1984), *cert den* — US —; 105 S Ct 158; 83 L Ed 2d 95 (1984); *Cutts v Fowler,* 223 US App DC 414, 417; 692 F2d 138 (1982).

## II

We turn to the argument that the instant antinepotism policies are discriminatory *as applied* to Miller and Lowry. A facially neutral employment practice can operate as a mask or pretext for impermissible discrimination. Thus our decision

---

[14] *Parsons v County of Del Norte,* 728 F2d 1234 (CA 9, 1984), *cert den* — US —; 105 S Ct 158; 83 L Ed 2d 95 (1984) (due process and equal protection); *Cutts v Fowler,* 223 US App DC 414; 692 F2d 138 (1982) (freedom to marry); *Southwestern Community Action Council, Inc v Community Services Administration,* 462 F Supp 289 (D W Va, 1978) (due process); *Espinoza v Thoma,* 580 F2d 346 (CA 8, 1978) (equal protection); *Keckeisen v Independent School Dist 612,* 509 F2d 1062 (CA 8, 1975), *cert den* 423 US 833 (1975) (freedom to marry).

that the instant policies are *facially* neutral concerning the criterion of whether one is married does not preclude a finding that Miller and Lowry were nevertheless discriminated against because of their marital status or for some other impermissible reason.

Because summary judgments were entered in the instant cases, there are no factual records concerning the application of the antinepotism policies. Therefore, these cases are remanded for further proceedings.

### III

To summarize, the circuit court correctly construed the term "marital status." In each case, the judgment of the Court of Appeals is reversed.

Reversed and remanded for further proceedings consistent with this opinion.

WILLIAMS, C.J., and KAVANAGH, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with LEVIN, J.