*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANE DOE, by Next Friend GEORGEIA
KOLOKITHAS,

　　　　　Plaintiff-Appellant,

v

ALPENA PUBLIC SCHOOL DISTRICT and
ALPENA BOARD OF EDUCATION,

　　　　　Defendants-Appellees.

UNPUBLISHED
April 14, 2025
2:16 PM

No. 359190
Alpena Circuit Court
LC No. 2019-009053-NZ

ON REMAND

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

This case returns to this Court on remand from our Supreme Court to evaluate "whether the trial court correctly granted summary disposition under MCR 2.116(C)(10) of plaintiff's hostile-educational-environment-harassment claim under a theory of direct (as opposed to vicarious) liability under the [Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* (ELCRA)], including, if necessary, whether such a claim exists under the ELCRA at all." *Doe v Alpena Pub Sch Dist*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165441); slip op at 12 (*Doe II*). We hold that the ELCRA permits hostile-educational-environment-harassment claims under direct-liability theories. But, an educational institution is not liable if it shows that it took prompt and appropriate remedial action in response to the complainant's claims. The trial court in this case properly granted defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), because plaintiff failed to rebut defendants' evidence showing they took prompt and appropriate remedial action. Therefore, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

We explained the underlying facts of this case in our earlier opinion, *Doe v Alpena Pub Sch Dist*, 345 Mich App 35, 38-41; 3 NW3d 838 (2022) (*Doe I*), rev'd in part, vacated in part, & remanded ___ Mich ___ (2024) (Docket No. 165441):

This case arises from several incidents between minors, "Jane Doe"[1] and "John Roe." During the 2016-2017 school year, Jane and John were fourth-grade students assigned to the same classroom at Besser Elementary School (Besser) in the Alpena School District. John has a profound speech and language disorder that severely affects his ability to communicate with others. As a result, John was placed on an individualized education plan (IEP) and received special education services. These services included a full-time instructional aide who was tasked with communication assistance and "behavioral redirection." In addition to his speech difficulties, John was also suspected of having developmental and intellectual delays—though, at the time of the incidents, those delays had not been formally diagnosed.

On February 10, 2017, Jane told school officials that John gave her an unwanted hug and that he "humped" her three times (the February 10 incident). When asked the meaning of the term "hump," Jane demonstrated by "thrust[ing] her pelvis forward and backward several times." She also stated that John called her a derogatory term. The incident was reported to school administrators who imposed a three-day out-of-school suspension against John. The police investigated, but the prosecutor decided to not file a delinquency petition.

The next incident occurred on May 8, 2017 (the May 8 incident). While working on a project in class, Jane was walking to her desk when John approached her. According to Jane, John "tickled her up around her chest near her breast area and scratched her." John also "reached down to her private area (vulva) and began tickling it over her clothes." This incident was also reported to school officials who observed scratches on Jane's chest. John received an eight-day out-of-school suspension. When he returned to school, John was assigned to a different fourth-grade classroom and was placed in a separate lunch period from Jane. School administrators sent John's parents a letter indicating he was to have "no contact" with Jane. This incident was also investigated by the police. The prosecutor filed a delinquency petition against John, but charges were later dropped because the trial court found John to be incompetent. Soon after the May 8 incident, Jane transferred to another elementary school in the Alpena Public School District, where she remained through fourth and fifth grades.

In 2018, Jane and John advanced to sixth grade at Thunder Bay Junior High School (Thunder Bay), which is also in the Alpena Public School District. Before the school year, plaintiff's counsel sent school administrators a letter indicating that Jane was to have no contact with John. Plaintiff met with a principal at Thunder Bay, who assured plaintiff that Jane and John would not interact and that John's instructional aide would be with him throughout the day. The principal also verified that Jane and John would not ride on the same school bus. Despite these

---

[1] Our Supreme Court refers to John Roe as "Roe" and to Jane Doe as "Doe." We refer to them as "John" and "Jane."

assurances, the two rode the same bus the first day of school. Jane reported that John was "doing . . . this weird . . . dance in front of the aisle . . . but he was . . . right by me, and he kept . . . doing it . . . to me." Jane immediately told school administrators about the incident. At first, Jane was assigned to a different bus, but it was later arranged for John to change buses. Jane also reported seeing John in the hallways as they passed between classes. Consequently, John's aide was directed to take him to his classes by a different route; the aide was also told to keep a "straight-eye view" of John at all times. Jane eventually left Thunder Bay and transferred to a private school where she remained.

Plaintiff filed this complaint on Jane's behalf alleging gross negligence[] and hostile environment under the ELCRA. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). Specific to plaintiff's ELCRA claim, defendants argued that plaintiff failed to state a claim because a hostile-environment claim based on "student-on-student" sexual harassment was not actionable under the ELCRA. Defendants further argued that even if plaintiff did present a claim under the ELCRA, summary disposition was appropriate because plaintiff failed to satisfy the elements of a hostile-environment claim. The trial court agreed, concluding that Michigan precedent does not offer a remedy under the ELCRA for a hostile educational environment arising from student-on-student harassment. The trial court further determined that, even if plaintiff could state a claim on this basis, plaintiff had failed to demonstrate there was a genuine dispute of fact as to whether defendants were vicariously liable for John's actions.

On appeal, we held that the trial court erred in concluding summary disposition was proper under MCR 2.116(C)(8). *Doe I*, 345 Mich App at 47. We reasoned that "schools stand *in loco parentis* to the offending student and can be held vicariously liable for student-on-student harassment[,]" and, thus, "the trial court erred by granting summary disposition simply because plaintiff asserted a claim predicated on student-on-student harassment." *Id*. Our Supreme Court concluded there was no language in the ELCRA permitting "a vicarious-liability cause of action against an educational institution for a hostile educational environment that is the result of student-on-student sexual harassment." *Doe II*, ___ Mich at ___; slip op at 11-12. We now consider whether the ELCRA permits a claim for hostile-educational-environment-harassment under a direct-liability theory, and, if so, whether the trial court erred in granting defendants' motion for summary disposition.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159 (emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone[,]" *id*. at 160, and must construe these factual allegations "in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160.

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Maiden*, 461 Mich at 119. We are to accept "all well-pleaded factual allegations" as true and view them in a light most favorable to the nonmoving party. *Id*. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119. (quotation marks omitted). In deciding such motions, we are to "consider[] only the pleadings." *Id*. at 119-120.

"A motion under MCR 2.116(C)(10), on the other hand, tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves an issue open upon which reasonable minds might differ." *Id*. (citation omitted). Under the burden-shifting framework of this court rule:

> [T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

This case also involves issues of statutory interpretation, which we review de novo. *Doe II*, ___ Mich at ___; slip op at 4.

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001) (citations omitted).]

## III. LAW AND ANALYSIS

The purpose of the ELCRA is to target "the prejudices and biases borne against persons because of their membership in a certain class" and "to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Radtke v Everett*, 442 Mich 368, 379; 501 NW2d 155 (1993) (quotation marks omitted), quoting *Miller v CA Muer Corp*, 420 Mich 355, 363; 362 NW2d 650 (1984). In furtherance of this purpose, the ELCRA declares that "[t]he opportunity to . . . the full and equal utilization of . . . educational facilities without discrimination because

of . . . sex . . . as prohibited by this act, is recognized and declared to be a civil right." MCL 37.2102(1).

The ELCRA expressly prohibits gender-based discrimination by educational institutions, mandating that they are not to "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex . . . ." MCL 37.2402(a). It further proscribes educational institutions from "[d]eny[ing] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex . . . ." MCL 37.2302(a).

Under MCL 37.2103:

(k) Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

(*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

(*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

(*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(k).]

At issue here is the third condition, known as "hostile environment harassment." *Chambers v Trettco, Inc*, 463 Mich 297, 310; 614 NW2d 910 (2000).

We first address the question whether the ELCRA permits a hostile-educational-environment-harassment claim under a direct liability theory. *Doe II*, ___ Mich at ___; slip op at 12. In answering this question, we are persuaded by the statement in Justice CAVANAGH's concurrence in *Doe II* that "the ELCRA, as a remedial statute, should be liberally construed to advance the act's goal of remedying discrimination in educational institutions." *Doe II*, ___ Mich at ___; slip op at 2 (CAVANAGH, J., concurring), citing *Eide v Kelsey-Hayes Co*, 431 Mich 26, 34; 427 NW2d 488 (1988). Justice CAVANAGH also opined that, under the plain language of the ELCRA, "educational institutions may be held directly liable when they fail to take appropriate remedial action and instead create a hostile educational environment that deprives a student of receiving 'the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution . . . .' " *Doe II*, ___ Mich at ___; slip op at 2 (CAVANAGH, J., concurring), quoting MCL 37.2402(a). "In other words, the plain and ordinary language of ELCRA explicitly states that an educational institution *itself* may not deny a student the full

utilization of, or benefit from, the educational institution by allowing a hostile educational environment because of its own actions." *Doe II*, ___ Mich at ___; slip op at 2 (CAVANAGH, J., concurring). We adopt this analysis and hold that the plain language of the ELCRA allows plaintiff to bring the claim under a direct-liability theory because it is undisputed defendants are educational institutions within the meaning of MCL 37.2401, and plaintiff alleged defendants discriminated against Jane on the basis of her sex by creating a hostile educational environment, MCL 37.2402(a).

We next consider whether "the trial court correctly granted summary disposition under MCR 2.116(C)(10) of plaintiff's hostile-educational-environment-harassment claim under a theory of direct (as opposed to vicarious) liability under the ELCRA." *Doe II*, ___ Mich at ___; slip op at 12. "[T]here are five necessary elements to establish a prima facie case of a hostile work environment[.]" *Radtke*, 442 Mich at 382.[2] These include:

> (1) the employee belonged to a protected group;
>
> (2) the employee was subjected to communication or conduct on the basis of sex;
>
> (3) the employee was subjected to unwelcome sexual conduct or communication;
>
> (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment;[] and
>
> (5) respondeat superior. [*Id*.]

At issue here is the fifth element—respondeat superior. *Id*. In cases where a plaintiff brings a hostile-work-environment claim under a direct-liability theory against their employer, "strict imposition of vicarious liability on an employer is illogical in a pure hostile environment setting because, generally, in such a case, the supervisor acts outside the scope of actual or apparent authority to hire, fire, discipline, or promote." *Chambers*, 463 Mich at 311 (quotation marks omitted), quoting *Radtke*, 442 Mich at 396 n 46. Instead, the relevant inquiry is whether the employer, "adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Radtke*, 442 Mich at 396 (quotation marks and citation omitted).

Applying this question to the present case, we again find guidance in Justice CAVANAGH's concurring opinion: "[A] direct non-agency theory of liability . . . require[s] a focus on defendants'

---

[2] "Because the educational provisions of the [ELCRA] have received little judicial interpretation and because the statutory language employs terms of art used and judicially interpreted extensively in the specialized but extensive field of employment discrimination, we look to these decisions to help us interpret and apply the law to the facts." *Fonseca v Michigan State Univ*, 214 Mich App 28, 30; 542 NW2d 273 (1995).

notice of John Roe's harassment, their responsive actions within the educational environment, and how defendant's [sic] actions impacted plaintiff." *Doe II*, ___ Mich at ___; slip op at 4 (CAVANAGH, J., concurring). Defendants' motion for summary disposition addressed their response to the February 10 incident, noting that John was "issued an out-of-school suspension ('OSS') for three (3) days which was progressively more severe than his previous suspension." They further asserted that they offered to move Jane to a different class, but she declined. Defendants presented documentary evidence in support of these assertions.

Defendants also addressed their response to the May 8 incident, providing evidence of (1) an eight-day OSS against John; (2) his removal from Jane's classroom and lunchroom; and (3) a letter from school staff to John's parents, advising that "[t]here [was] to be no contact between [John] and [Jane.]" Defendants provided documentary evidence supporting their assertion that, upon Jane's return to public school in 2018, they "took additional preventative measures, including changing bus schedules and even monitoring passing periods to prevent [John] and [Jane] from interacting." Moreover, when Jane was inadvertently placed on the same school bus as John, defendants promptly corrected the issue.

Defendants demonstrated that they took prompt remedial action after learning of the incidents between the students, and that their responses were designed to balance Jane's needs with John's behavioral offenses. Defendants therefore satisfied their burden of showing that they promptly and appropriately responded to John's harassment on Jane's behalf. The burden then shifted to plaintiff to present documentary evidence showing a genuine question of fact as to this issue. *Quinto*, 451 Mich at 362-363.

Plaintiff's response to the motion for summary disposition argued that "[d]efendant[s] knew about John's sexual behavior before yet failed to implement . . . prompt and adequate procedures to prevent the harm suffered by Jane[.]" Plaintiff further claimed that, in assigning John an educational aide, defendants "plac[ed] the responsibility for preventing the harm into the care of somebody who was unqualified and who defendant[s] knew had failed to do her duty on prior occasions." Under the burden-shifting framework of MCR 2.116(C)(10), plaintiff had to "go beyond the pleadings to set forth *specific facts* showing that a genuine issue of material fact exists." *Quinto*, 451 Mich at 362 (emphasis added). As we explained in *Doe I*:

> Plaintiff's assertions that John's instructional aide was "unqualified" and that she had "failed to do her duty" are not "specific" facts which demonstrate that defendants' remedial actions to John's behavior were unreasonable. While plaintiff's response to the motion for summary disposition included a number of exhibits, plaintiff failed to pinpoint anything within the exhibits to support her assertions. Moreover, plaintiff failed to explain why defendants' other actions— suspending John from school and removing him from the fourth-grade class—were not appropriate remedial actions. [*Doe I*, 345 Mich App at 49-50.]

Plaintiff failed to satisfy her burden as the nonmoving party and thus failed to show a genuine issue of material fact as to whether defendants took prompt and appropriate remedial action. Thus, the trial court properly granted summary disposition under MCR 2.116(C)(10).

Affirmed.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica