**Joseph L. SOGLUIZZO, Plaintiff,**

v.

**LOCAL 817, INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS,
Defendant.**

**No. 79 Civ. 4076.**

United States District Court,
S. D. New York.

May 6, 1981.

Joseph L. Sogluizzo pro se.

Cohen, Weiss & Simon, New York City, for defendant, Eugene S. Friedman, New York City, Katherine Stone, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Joseph L. Sogluizzo, appearing *pro se*, brings this action pursuant to Title VII of the Civil Rights Act of 1964,[1] charging defendant with discrimination by the denial of union membership and job referrals and retaliation for making an administrative complaint, all based on national origin (Italian) and "not being sponsored by anyone in union." Defendant now moves for summary judgment.

Local 817 operates a hiring hall in which members and nonmembers alike are referred to jobs. "Shapees" sign a list by 7:30

---

1. 42 U.S.C. §§ 2000e *et seq.*

each weekday morning to be eligible for a referral that day. Plaintiff began to "shape" at the hiring hall in 1966. At the time he was a member of Local 807 and alleges that he tried to join Local 817, an affiliate of the International Brotherhood of Teamsters, but was told transfers were not accepted. The Union's by-laws provided that a transfer from another local would be accepted upon showing a valid transfer card, which plaintiff admittedly did not do. His explanation is that it was not the practice to comply with that procedure. Rather, he contends those who were related to or sponsored by current members of the Local never had to ask for membership or comply with the written procedure.

Plaintiff shaped regularly at the hiring hall from 1966 through 1977. By his own admission, the number of referrals he received generally varied according to the amount of business at the hiring hall at the time. However, in February 1978, he filed a complaint with the New York State Human Rights Division alleging that the denial of union membership constituted discrimination on the basis of national origin and age. After a hearing, at which plaintiff was represented by counsel, the Human Rights Division dismissed the complaint. Plaintiff filed an appeal which he later withdrew. After receiving a right-to-sue letter in July 1979, plaintiff brought this action in August 1979.

Plaintiff filed a second complaint in July 1978, this time alleging retaliation for bringing the original charge. After an informal conference, this too was dismissed upon a finding of no probable cause in January 1980. With respect to this charge, it does not appear he received a right-to-sue letter, as discussed hereafter.

A close study of the record makes it abundantly clear that plaintiff's grievance is based not on national origin or age but rather on nepotism and sponsorship. That is, plaintiff essentially charges that he was "discriminated against (as to being given membership in Union) because [he] wasn't related or sponsored by anyone who was a member of the Union." [2] Indeed, it is clear that he made the charge of discrimination on the basis of national origin simply because the "Human Rights Commission advised [plaintiff] that they could only accept case if charges of national origin and age were at issue [and] could not act on main charges of nepotism, sponsorship." [3] Plaintiff, in his response to the motion for summary judgment, contended that the Human Rights Division "should never have accepted my case." [4]

Plaintiff is converting a grievance against the Union based on an alleged policy of nepotism with respect to membership and referrals into a Title VII action based on discrimination because of national origin. But the facts do not support his conclusion. At the administrative hearing, which as noted addressed only the national-origin and age issues, plaintiff, when asked if he was aware that one quarter of the members of the Local were Italian, replied that he was "aware that [the Local has] some [Italians] *which were sponsored.*" [5] Plaintiff listed ten men who were below him in seniority but were jumped over him for membership purposes; significantly, two of these were Italian. Thus, even plaintiff's own list of those allegedly jumped over him contains a percentage of Italians corresponding to the overall membership of the Local, which records indicate has been approximately 25% throughout the period involved here.

■ Nepotism of itself does not violate Title VII. To come within the Civil Rights Act, nepotism must somehow be related to a pattern of discrimination based on nation-

2. Plaintiff's "Statement of the Case" in Response to Defendant's Objections to Magistrate's Recommendation, ¶ 1.

3. Plaintiff's Answer to Summary Judgment Motion, ¶ 1.

4. *Id.*

5. Hearing, N.Y.S. Human Rights Div., at 50 (emphasis supplied).

al origin or another protected class.[6] Plaintiff has failed to present any evidence on this motion to suggest a pattern; indeed, he has not even alleged such a pattern.[7]

In order to prevail on his job-referral claim, plaintiff must demonstrate that he was treated differently from other shapees because of his Italian origin; he need not show bad motive.[8] The Local has presented unchallenged evidence that the typical shapee receives an average of 80 referrals per year, and that plaintiff's referrals from 1971 to 1977 range from 85 to 112 per year. Plaintiff has offered no evidence to contravene this proof that he received more than an average number of referrals. Neither has he offered the slightest evidence that he was denied any referral by reason of his Italian origin.

Plaintiff's membership claim, besides failing for the same reason, fails on additional grounds as well. First, plaintiff claims that he applied for membership in 1966 but was told no transfers were being accepted. Even leaving aside defendant's contention, unrebutted by plaintiff, that plaintiff did not follow the procedures described in the by-laws to make his application, this claim is time-barred.

It is a jurisdictional prerequisite to maintenance of a Title VII suit that it be timely filed. Thus, "a plaintiff must have filed a charge of discrimination with EEOC [or a state counterpart] within 300 days of the alleged discriminatory act."[9] This prerequisite cannot be avoided by a conclusory allegation of a continuing violation.[10] By his own admission, plaintiff's only request for membership was an oral one in 1966. From that time to the present he has made no application as required by the Union by-laws. In this regard, his mere assertion that it would have been pointless to conform to the Union by-laws for membership because he would have been branded a trou-

6. See Gibson v. Local 40, 543 F.2d 1259, 1268 (9th Cir. 1976); Robinson v. Lorillard Corp., 444 F.2d 791, 798 (4th Cir.), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971).

7. In this regard, it is noteworthy that, when this motion was originally argued and plaintiff responded not with facts but with conclusory and emotional charges, the Court referred the motion to a magistrate affording plaintiff a further opportunity to present evidential support for his allegations. Although plaintiff's pleading and practice must be viewed liberally, Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), he still must respond to a motion for summary judgment with some factual showing sufficient to raise a genuine issue for trial. He may not rely on conclusory allegations. Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970); Stinson v. Sheriff's Dep't of Sullivan County, 499 F.Supp. 259, 262 (S.D.N.Y.1980); Morpurgo v. United States, 437 F.Supp. 1135, 1137 (S.D.N.Y.1977), aff'd, 580 F.2d 1045 (2d Cir.), cert. denied, 439 U.S. 1000, 99 S.Ct. 606, 58 L.Ed.2d 675 (1978) (movant entitled to summary judgment where opposing party simply reiterates conclusory allegations rather than factual foundations); Morgan v. Sylvester, 125 F.Supp. 380, 390 (S.D.N.Y.1954), aff'd per curiam, 220 F.2d 758 (2d Cir.), cert. denied, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955). However, plaintiff has not availed himself of this additional opportunity.

8. E. g., Furnco Const. Co. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); Albe-

marle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); Teal v. State of Connecticut, 645 F.2d 133 at 136 n.5 (2d Cir. 1981).

9. Association Against Discrim. in Employment, Inc. v. City of Bridgeport, 647 F.2d 256 at 273–274 (2d Cir. 1981). See United Air Lines, Inc. v. Evans, 431 U.S. 553, 554–55, 97 S.Ct. 1885, 1887, 52 L.Ed.2d 571 (1977); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 36 L.Ed.2d 147 (1974); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); 42 U.S.C. § 2000e–5(e).

10. United Air Lines, Inc. v. Evans, 431 U.S. 553, 557–60, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) ("discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence ... [when] current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.") See Delaware State College v. Ricks, —— U.S. ——, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); Egelston v. State University College, 535 F.2d 752, 755 (2d Cir. 1976) (violation must be "still fresh"); Carter v. Delta Air Lines, Inc., 441 F.Supp. 808, 811–12 (S.D.N.Y.1977).

blemaker is just that—an assertion. He has presented no evidential support for it.[11]

■ Further, plaintiff has not in any event made out a prima facie case of employment discrimination under Title VII. The elements of a prima facie case are well-settled; plaintiff must show that he is a member of a protected class, that he applied and was qualified for a job for which there was an opening, that he was rejected, and that the position remained open after he was rejected.[12] It is undisputed that plaintiff did not present a transfer card in 1966, as required by the by-laws, and did nothing affirmative thereafter to seek membership. Inasmuch as he has presented no evidence to support his undoubtedly deeply felt accusations concerning the membership process, he has not stated a prima facie case of employment discrimination in membership—he has not shown that he applied for membership. This claim must fail as well.

■ With respect to his retaliation claim, the record here presented does not contain a right-to-sue letter, which in and of itself defeats his claim.[13] In any event, plaintiff has failed to make out a prima facie case of retaliation. To establish such a case, he must show that he engaged in an activity protected under Title VII and that this was known by defendant, that defendant took an employment action disadvantageous to him, and that there was a causal connection between the two.[14]

In his complaint in this action, plaintiff alleges retaliation from the day the Union received his complaint to the Human Rights Division, about March 1, 1978.[15] In the papers he presented to the magistrate on this motion, plaintiff states that the Local was notified on February 10, 1978 of his intention to bring charges if he did not receive membership. Even accepting this earlier date, plaintiff has not shown a causal connection between his filing the original charge and the denial of membership or lack of referrals.

At his deposition, plaintiff testified that he shaped for most of January and February in 1978 but received no referrals. He stopped shaping shortly after he filed his original complaint. Thus his situation after the filing of his complaint was no different than it was in the two months prior to the filing of the charge upon which his claim of retaliation is based. Thus, plaintiff was not getting referrals for reasons other than retaliation. In the circumstances, it is unnecessary to factor in the Union's assertions that it did not learn of the complaint until mid-March so there was no cause to retaliate before then and its further contention that plaintiff did not get referrals because he appeared at the hiring hall late or did not sign in.

Plaintiff has thus failed to establish a prima facie case in support of any of his claims. This is not surprising in light of his consistent assertions that his grievance is one based on nepotism and sponsorship, not national origin. As he stated to the Human Rights Division, he initially brought his complaint because "[t]he fellows that came way after me were going out to work before me, or I wasn't getting any work at all, simply because they were sponsored by somebody or somebody knew them." [16] This complaint with respect to hiring-hall practices may state a claim of an unfair

---

11.  See note 7 supra.

12.  McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

13.  Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); Movement For Opportunity & Equality v. General Motors Corp., 622 F.2d 1235, 1238 (7th Cir. 1980).

14.  Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2d Cir. 1980); EEOC v. Locals 14 & 15, 438 F.Supp. 876, 881 (S.D.N.Y.1977).

15.  The Union claims it did not receive the complaint until March 14, 1978, but for purposes of this motion plaintiff's date is accepted as true.

16.  Hearing, N.Y.S. Human Rights Div., at 30.

labor practice under the National Labor Relations Act,[17] but does not support a claim under Title VII of the Civil Rights Act of 1964. Plaintiff has failed to present any facts in support of his Title VII claims despite being given several opportunities to do so. In the circumstances, defendant's motion for summary judgment is granted.

So ordered.

---

17. NLRA §§ 8(b)(1)(A), 8(b)(2), 29 U.S.C. §§ 158(b)(1)(A), 158(b)(2). *See Farmer v. United Bhd. of Carpenters & Joiners, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Local 357, Int'l Bhd. of Teamsters v. NLRB*, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961); *Radio Officers' Union v. NLRB*, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954); *Daniels v. Pipefitters, Local 342*, 95 LRRM 3290 (N.D.Cal. 1977).