**Rebecca SEARS, Plaintiff,**

v.

**RYDER TRUCK RENTAL, INC., a foreign corporation, Defendant.**

**No. 84–CV–0495–DT.**

United States District Court, E.D. Michigan, S.D.

Nov. 2, 1984.

---

**62.** *In Re Petition to Inspect and Copy Grand Jury Materials,* 735 F.2d 1261 (11th Cir.1983).

**63.** *Id.* at 1267–68.

**64.** 103 S.Ct. at 3166, 3169.

Lacey & Jones by Kathleen S. McNichol, Detroit, Mich., for plaintiff.

Clark, Klein & Beaumont by Donald A. Van Suilichem, Detroit, Mich., for defendant.

## OPINION

GILMORE, District Judge.

This case raises two important issues. The first is whether a claim under the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101, et seq., is preempted by Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), if the complaint is characterized as a breach of the collective bargaining agreement. The second issue is whether discharge of a fuel island attendant because of management disapproval of her social relationship with a district manager co-employee is discrimination in violation of the Elliot-Larsen Civil Rights Act. The answer to both questions is no.

Plaintiff was employed by the defendant as a fuel island attendant. She was dating a male co-employee, who held a much higher and more important job as a district manager. Defendant had a policy prohibiting co-employee dating, and told plaintiff and the male co-employee to end their dating, or one of them would be terminated. Plaintiff, who is a female and who was the lower paid of the two, resigned and brought this action claiming the dating relationship was akin to a marriage relationship and should be similarly protected. She also contends that the co-employee she was dating had no direct supervisory control over her, that there was no conflict of interest, and no reason for defendant to apply its "no dating" policy in this situation.

Defendant has filed a motion to dismiss, pursuant to F.R.C.P. 12(b)(6). Its first contention is that plaintiff's complaint should be characterized as a breach of the collective bargaining agreement between defendant and plaintiff, and, as such, must be decided under Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a). It further claims that plaintiff failed to exhaust her union grievance procedure, which is a prerequisite for a Section 301(a) suit, and that her claim is time barred by the six month statute of limitations applicable to Section 301 suits. It is true, but irrelevant, that plaintiff did not exhaust her union grievance procedure. She says, quite correctly, that her claim falls within the purview of the Elliot-Larsen Act, and that she may pursue it even though she did not exhaust her contractual remedies.

## I

Michigan's Elliot-Larsen Act was modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Both acts are silent on the need to exhaust contractual remedies, or the effect of invoking union grievance procedures. However, courts have generally held that in Title VII cases Congress intended Title VII to be a separate and distinct mode of recovery.

■ Title VII allows individual actions against an employer based on discrimination even where action would be available under the National Labor Relations Act. In *Alexander v. Gardner-Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), plaintiff pursued his discrimination grievance to final arbitration under his collective bargaining agreement, but it was held that he was not bound by the unfavorable arbitrator's decision and could sue his employer under Title VII. The Court stated that the federal policy favoring arbitration does not establish that an arbitrator's resolution of a contractual claim is dispositive of a statutory claim under Title VII. It pointed out that the legislative history of Title VII manifested a Congressional intent to allow an individual to pursue independently his or her rights under both Title VII and other applicable state and federal statutes.

> The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement.

*Id.* at 48, 49, 94 S.Ct. at 1020.

■ The holding in *Alexander* argues strongly in favor of permitting a Title VII claimant to recover even if he or she has failed to exhaust contractual remedies. In *Williams v. Owen-Illinois, Inc.*, 665 F.2d 918 (9th Cir.1982), the court allowed an action under Title VII for a claim of back pay for which there had been an adequate remedy under the collective bargaining agreement at the time of the violation, but plaintiffs failed to use it. It is only logical that if, after an arbitrator's decision, the employee can still maintain an action under Title VII, an employee should be able to maintain an action without going through the grievance procedure, and the Court so holds.

Michigan courts have held similarly with reference to age discrimination claims brought under the Elliot-Larsen Act. In *Adama v. Doehler-Jarvis*, 115 Mich.App. 82, 320 N.W.2d 298 (1982), the court held that an action for age discrimination brought under the Elliot-Larsen Act was not preempted by the National Labor Relations Act. The Court noted *Alexander supra*, and held the employee's action was not preempted because the regulation of employment practices are within the area of traditional State regulation. It also pointed out that claims brought under the Elliot-Larsen Civil Rights Act are different from those that are brought under the NLRA, and that, therefore, there was no risk of interference with the jurisdiction of the NLRA and, thus, no preemption.

■ It therefore appears clear that plaintiff's claim here is within the purview of the Elliot-Larsen Act. Under both Title VII and the Elliot-Larsen Act, an aggrieved employee has an independent action to vindicate discrimination. Clearly, plaintiff may maintain an independent cause of action here, even though she has not exhausted her grievance procedures under her labor contract.

■ Plaintiff claimed her treatment was sexual harassment. Under both acts, the elements of a prima facie case of sexual harassment are: 1) the employee belongs to a protected group, 2) the employee was subject to unwelcome sexual harassment, 3) the harassment complained of was based on sex, 4) the harassment affected a term, condition, or privilege of employment, and 5) the employer knew of the harassment in question and failed to take prompt remedial action. *See Coley v. Consolidated Rail*

*Corp.,* 561 F.Supp. 645 (E.D.Mich.1982). Plaintiff fails to state a claim for sexual harassment.

## II

The second, and more difficult, issue relates to whether the actions in this case constitute sex discrimination that is actionable under the Elliot-Larsen Act.

■ The crux of a sex discrimination case under Elliot-Larsen is that similarly situated persons have been treated differently because of their sex. *Heath v. Alma Plastics Co.,* 121 Mich.App. 137, 328 N.W.2d 598 (1982). It is clear that the Elliot-Larsen Act prohibits discrimination on the basis of the existence or non-existence of a spouse, although it says nothing about discrimination because a spouse has the same employer. It specifically prohibits discriminatory employment practices based on marital status without defining the term "marital status."

■ Plaintiff's contention here is that she should be entitled to the same protection as if she were married because defendant's policy prohibiting co-employee dating is similar to employer "no spouse" rules that discriminate on the basis of marital status, in violation of the Act.

In *Klanseck v. Prudential Insurance Company of America,* 509 F.Supp. 13 (E.D.Mich.1980), the term "marital status" was narrowly construed, and the court held that the Elliot-Larsen Act merely prohibited employers basing an employment decision on whether the individual was married or single. However, the Michigan courts, which this Court must follow here, have put a broader construction on "marital status." In *Miller v. C.A. Muer, Corp.,* 124 Mich.App. 780, 336 N.W.2d 215 (1983), the court stated that one objective of the Elliot-Larsen Act is to prevent discriminatory employment practices based on arbitrary classifications, and this purpose would be furthered by construing "marital status" to include a prohibition against discriminatory employment practices based on the identities of one spouse.

It is clear, however, that the Elliot-Larsen protections have not been extended to non-spousal relationships. The statute does not prohibit an employer's anti-nepotism, which prevents relatives working together, except when the rule is applied specifically to spouses. *Lowry v. Sinai Hospital of Detroit,* 129 Mich.App. 726, 343 N.W.2d 1 (1983). Outside of Michigan, state courts that have inspected no-spouse rules in terms of marital status discrimination have reached contrary results based upon their differing constructions of "marital status." It appears, however, that no state has extended protection to employee social relationships.

There is much law under Title VII relating to various types of relationships that are protected and not protected under Title VII.[1] However, none of these deal with

---

[1]. The following have been found not to be covered by Title VII:

Failure to pay female coaches of female sports the same salary as male coaches of male sports is not sex discrimination. *Kenneweg v. Hamptown Township School District,* 438 F.Supp. 575 (D.C.Pa.1977).

Bias against transsexuals, *Powell v. Reads, Inc.,* 436 F.Supp. 369 (D.C.Md.1977).

Nepotism, unless it is related to a pattern of discrimination based on national origin, or some other protected class. *Sogluizzo v. International Brotherhood of Teamsters,* 514 F.Supp. 277, 279 (S.D.N.Y.1981).

Employer did not discriminate in considering whether a job applicant was living with another person out of wedlock, had an illegitimate child, or had a venereal disease. *United States v. Virginia,* 454 F.Supp. 1077 (D.C.Va.1978).

Rule against the wearing of pantsuits by female employees at one location, even though female employees in a separate location could wear pantsuits. *Lanigan v. Bartlett & Co.,* 466 F.Supp. 1388 (W.D.Mo.1979).

Determination not to hire methadone users is not violative of Title VII. *New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

On the other hand, the following unusual issues have been held to be covered by Title VII.

Employer's rule requiring female lobby attendants to wear sexually provocative uniforms, which subject employee to sexual harassment, violates Title VII. *EEOC v. Sage Realty Corp.,* 507 F.Supp. 599 (S.D.N.Y.1981).

"No Beards" policy violated Title VII where black employee suffered from skin condition

the specific issue at hand, nor is there any Michigan authority on the issue at hand.

Marriage is one of the individual rights that the Supreme Court has deemed to be fundamental, as is the right to privacy, which includes various forms of freedom of choice in matters relating to the individual's personal life style.

Plaintiff here argues that the right to privacy should encompass some right to be free of an employer's regulations of one's personal lifestyle. However, in *Hollenbaugh v. Carnegie Free Library*, 578 F.2d 1374 (3rd Cir.1978), *cert. denied* 439 U.S. 1052, 99 S.Ct. 734, 58 L.Ed.2d 713 (1978), the Supreme Court denied certiorari in a case in which a government employed librarian and the custodian of the library were discharged from their employment because they lived together, and had a child out of wedlock.

Here, plaintiff suggests the Elliot-Larsen Act should be extended to prohibit employer's policies against co-employee dating. But the decision in *Lowry, supra*, that an employer's anti-nepotism policy did not violate the Elliot-Larsen Act, except when applied to spouses, argues against expanding the Elliot-Larsen Act to protect a mere dating relationship when nepotism is not covered by the Act. Title VII and the Elliot-Larsen Act prohibit employment discrimination based on race, religion, sex, national origin, and age.[2] However, there appears to be no protection for social relationships.

Here, plaintiff asks the Court to expand the marital status prohibition to the situation where there is no marital relationship. The Court finds no basis for such an expansive reading of the Elliot-Larsen Act. There are strong policy provisions for protecting the marital relationship and marital status. Such policy considerations do not apply to a mere dating situation, and should not be written into law by a court.

Presumably, the Legislature considered such matters when it enacted the Act and chose to protect the marital status, but not mere social relationships. Plaintiff's request for a broader construction of the Elliot-Larsen Act cannot properly be addressed to this Court, but must be left to the Michigan Legislature. Therefore, the defendant's motion to dismiss will be granted. No costs, a public question being involved.

---

made worse by shaving. *EEOC v. Greyhound Lines, Inc.,* 494 F.Supp. 481 (E.D.Pa.1979).

Tall woman may not be refused employment merely because on the average women are too short for the job. *Los Angeles Department of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978).

**2.** Elliot-Larsen also prohibits discrimination based on marital status, but Title VII has no marital status discrimination provision.