953 P.2d 88 (1998)
134 Wash.2d 748
Wayne WAGGONER and Kathey Cyr, Respondents,
v.
ACE HARDWARE CORPORATION, a Washington corporation, Petitioner.
No. 65079-9.
Supreme Court of Washington, En Banc.
Argued October 10, 1997.
Decided March 26, 1998.
Lofland & Associates, Gary E. Lofland, Yakima, for Petitioner.
Prediletto, Halpin, Scharnikow & Smart, David L. Trick, Yakima, David Putney, Las Vegas, NV, for Respondent.
SANDERS, Justice.
Wayne Waggoner and Kathey Cyr claim Ace Hardware Corporation engaged in prohibited marital status discrimination by enforcing its employment policy against related, cohabiting or dating employees supervising *89 one another contrary to RCW 49.60.180. The trial court dismissed this claim by partial summary judgment; however, the Court of Appeals reversed and remanded to determine business necessity, if any. We reverse the Court of Appeals and reinstate the dismissal.
Two issues are presented: (1) does employment action against cohabiting or dating employees violate RCW 49.60.180 which prohibits marital status employment discrimination; and, if so, (2) does "business necessity" justify the discrimination in this case. We conclude cohabiting or dating relationships are not aspects of "marital status" as these terms are used in the statute and, thus, find the presence or absence of "business necessity" superfluous.

I. Facts
Ace employed Waggoner and Cyr in its Yakima distribution center. Waggoner was the Assistant Distribution Center Manager and was second in command at the facility. He often assumed full responsibility of its operations. Cyr worked as Traffic Supervisor, as Waggoner's subordinate, at the same facility.
Ace prohibits "[e]mployment of close relatives, cohabitors or dating employees within the same departments and/or within the same functional area where one might exercise authority or influence over the other's job status or progression...." Clerk's Papers (CP) at 119-20. Ace also requires employees to disclose conflicts of interest, including relationships which violate company policy.
In 1988 Ace received complaints that Waggoner and Cyr were cohabiting or dating contrary to company policy. The company's Retail Service Manager documented several conversations with Waggoner concerning Waggoner and Cyr's relationship from 1988 through 1991. Waggoner denied any romantic relationship with Cyr.
After confirming Waggoner and Cyr were at least temporarily living together in Cyr's home, Ace's Retail Service Manager again confronted Waggoner and Cyr with allegations of a relationship in 1992.[1] Waggoner and Cyr denied having a relationship but testified they were nevertheless discharged for "seeing" one another. CP at 178. Both Waggoner and Cyr's termination slips cite dishonesty as the reason for discharge.
Waggoner and Cyr married on May 16, 1992, four months after their discharge. They filed suit in superior court against Ace alleging both wrongful termination and marital status discrimination. The trial judge granted Ace's motion for summary judgment on the marital status claim. A jury subsequently found for Ace on the wrongful termination claim. Waggoner and Cyr then appealed the partial summary judgment order, which by then had become a final appealable order. RAP 2.2(a).
The Court of Appeals reversed. Waggoner v. Ace Hardware Corp., 84 Wash.App. 210, 927 P.2d 251 (1996). We granted review. Waggoner v. Ace Hardware Corp., 132 Wash.2d 1001, 939 P.2d 216 (1997).

II. Standard of Review
The summary judgment standard requires the court to consider facts and reasonable inferences in a light most favorable to the nonmoving party. Questions of law are reviewed de novo. Failor's Pharmacy v. Department of Soc. & Health Servs., 125 Wash.2d 488, 493, 886 P.2d 147 (1994). We may reverse the Court of Appeals if we agree with the trial court that there is no genuine issue of material fact and conclude Ace is entitled to judgment as a matter of law. Fahn v. Cowlitz County, 93 Wash.2d 368, 371-72, 610 P.2d 857, 621 P.2d 1293 (1980).

III. Legal Analysis
RCW 49.60.180 prohibits employment discrimination on the basis of "marital status." The statute provides:
It is an unfair practice for any employer... [t]o discharge or bar any person from employment because of ... marital status *90 .... [or] to discriminate against any person in compensation or in other terms or conditions of employment because of ... marital status.... [[2]]
RCW 49.60.180(2)-(3).
Waggoner and Cyr argue "marital status" includes social relationships. The Court of Appeals agreed, concluding the statute's purpose is "to prevent an employer's unnecessary intrusion into an employee's private affairs such as sexual relationships and living arrangements." Waggoner, 84 Wash.App. at 213, 927 P.2d 251.

A. The plain and unambiguous meaning of marital status
If the plain meaning of marital status does not encompass cohabiting or dating relationships, this court must enforce the statute as written without judicial interpretation. State v. McCraw, 127 Wash.2d 281, 288-89, 898 P.2d 838 (1995) (citing Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 329, 815 P.2d 781 (1991) (quoting King County v. Taxpayers of King County, 104 Wash.2d 1, 5, 700 P.2d 1143 (1985))), superseded by statute as stated in State v. Bolar, 129 Wash.2d 361, 917 P.2d 125 (1996). The plain meaning of a statute is discerned by affording statutory terms their "ordinary, everyday meaning." New York Life Ins. Co. v. Jones, 86 Wash.2d 44, 47, 541 P.2d 989 (1975).
Davis v. Department of Employment Sec., 108 Wash.2d 272, 737 P.2d 1262 (1987), examined the definition of marital status. In Davis an unemployment compensation claimant quit her job to live with a man in another city. Id. at 273-74, 737 P.2d 1262. Said claimant filed for benefits alleging her unemployment was caused by her marital status, i.e., the decision to follow her partner to another city. Id. at 278, 737 P.2d 1262. We disagreed: "[W]hile the definition of the term `meretricious' has lost its original derogatory connotation ..., the term `marital' is still defined as `of or relating to marriage or the marriage state.'" Id. at 277, 737 P.2d 1262 (quoting Webster's Third New International Dictionary). We concluded while leaving a job to marry and move implicates marital status, quitting to cohabit or date does not. Id. at 278, 737 P.2d 1262.
Davis relied upon McFadden v. Elma Country Club, 26 Wash.App. 195, 613 P.2d 146 (1980). Davis, 108 Wash.2d at 278, 737 P.2d 1262. McFadden held a country club could deny membership to a couple because of their intention to live together without the benefit of marriage. The court explained cohabiting was a crime upon enactment of the statute, McFadden, 26 Wash.App. at 201-02, 613 P.2d 146, and a subsequent amendment to RCW 49.60.222 expressed "a broader public policy against protection of unmarried living arrangements." McFadden, 26 Wash.App. at 202, 613 P.2d 146. The court there construed social relationships to be outside the statute's protection.[3]
The ordinary meaning of marital status pertains to the status of being married, separated, divorced, or widowed. See Black's Law Dictionary 967 (6th ed.1990). Cohabiting or dating does not alter any of these attributes. Thus the plain meaning of these terms is sufficient to resolve this case.

B. Background factors which confirm plain meaning
When statutory language is "amenable to more than one construction ..., resort to legislative history and other aids to construction is appropriate." Kadoranian v. Bellingham *91 Police Dep't, 119 Wash.2d 178, 185, 829 P.2d 1061 (1992). The historical development of a statutory scheme, through a succession of amendments, has also been judicially employed to illuminate the meaning of statutory language. White v. State, 49 Wash.2d 716, 722-25, 306 P.2d 230 (1957), appeal dismissed, 355 U.S. 10, 78 S.Ct. 23, 2 L.Ed.2d 21 (1957).
Three additional factors suggest statutory use of the term "marital status" does not include reference to cohabitation or dating.
First, cohabiting was a crime under Washington law when the Legislature included marital status as a protected class.[4] RCW 9.79.120, repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010. Cohabitation remained a crime until three years after the Legislature's inclusion of marital status as a protected class. Laws of 1973, ch. 141 § 10; Laws of 1975, 1st Ex.Sess., ch. 260, § 9A.92.010. It would be most anomalous for the Legislature to criminalize and protect the same conduct at the same time.
Waggoner and Cyr suggest society's view of meretricious relationships has evolved since RCW 49.60.180 was enacted; however, while this may be true, it is not pertinent to statutory understanding. We presume legislative consistency when called upon to construe statutory enactments or new amendments to old ones. Department of Fisheries v. Chelan County PUD No. 1, 91 Wash.2d 378, 383, 588 P.2d 1146 (1979) (citing State v. Roth, 78 Wash.2d 711, 715, 479 P.2d 55 (1971)); McFadden, 26 Wash.App. at 202, 613 P.2d 146. As per McFadden, 26 Wash.App. at 202, 613 P.2d 146, "[t]he existence of the illegal cohabitation statute for 3 years after the amendment of RCW 49.60.222 would seem to vitiate any argument that the legislature intended `marital status' discrimination to include discrimination on the basis of a couple's unwed cohabitation."
Whether social relationships deserve protection under RCW 49.60.180 is a decision for the Legislature, not this court. Davis, 108 Wash.2d at 278-79, 737 P.2d 1262 (citing Norman v. Unemployment Ins. Appeals Bd., 34 Cal.3d 1, 663 P.2d 904, 908, 192 Cal.Rptr. 134 (1983) ("It is for the Legislature to determine whether such relationships because of their commonness in today's society or for other policy reasons, deserve the statutory protection afforded the sanctity of the marriage union")). See also Vita Food Prods., Inc. v. State, 91 Wash.2d 132, 134, 587 P.2d 535 (1978).
Second, the Legislature expressly defined "marital status" in the 1993 amendments and that definition excluded social relationships. See Laws of 1993, ch. 510, § 4 (Marital status is "the legal status of being married, single, separated, divorced, or widowed").
Magula v. Benton Franklin Title Co., 131 Wash.2d 171, 181, 930 P.2d 307 (1997), recognized the 1993 amendment was inconsistent with our previous definition of marital status, which included the identity of one's spouse. Id. at 181, 930 P.2d 307. In contrast, we have never held one's marital status includes social relationships. We held in Ravsten v. Department of Labor & Indus., 108 Wash.2d 143, 736 P.2d 265 (1987), "Where the statute has not been interpreted to mean something different and where the original enactment was ambiguous to the point that it generated dispute as to what the Legislature intended, a subsequent amendment can enlighten courts as to a statute's original meaning." Id. at 150-51, 736 P.2d 265 (citing Overton v. Economic Assistance Auth., 96 Wash.2d 552, 637 P.2d 652 (1981)). Precedent suggests where a former statute is amended, such amendment is strong evidence of legislative intent of the first statute. See 2B Norman J. Singer, Sutherland Statutory Construction § 49.11, at 83 (5th ed.1992); Cowiche Growers, Inc. v. Bates, 10 Wash.2d 585, 604, 117 P.2d 624 (1941); Groves v. Meyers, 35 Wash.2d 403, 408, 213 P.2d 483 (1950).
As the Legislature has now defined marital status as "the legal status of being married, single, separated, divorced or widowed," RCW 49.60.040(7), by the plain meaning of the definition the Legislature has limited protected status exclusively to that which is *92 included within the definition, i.e., the status of being single, married, separated, divorced, or widowed.
Although the amendment primarily incorporated the Human Rights Commission's (HRC) definition which includes the status of "married, single, divorced, or widowed," it also added "separated" as an independent marital status. WAC 162-04-010. Such is but a further demonstration that the Legislature considered what the definition should include, expanded the definition as it saw fit, yet stopped short of extending its scope to include cohabiting or dating relationships.
Third, the HRC has never interpreted RCW 49.60.180 to prohibit discrimination based upon cohabiting or dating relationships through rule or practice. We may "give great weight to the interpretation given a statute by the agency charged with its enforcement." Griffin v. Eller, 130 Wash.2d 58, 87, 922 P.2d 788 (1996) (citing Holland v. Boeing Co., 90 Wash.2d 384, 389, 583 P.2d 621 (1978)); Washington Water Power Co. v. Washington State Human Rights Comm'n, 91 Wash.2d 62, 68-69, 586 P.2d 1149 (1978).
The absence of such a practice or rule gives rise to a negative inference because the HRC's definition of marital status does not include consideration of cohabiting or dating relationships. Rather the HRC's rule provides marital status "refers to the legal status of being married, single, divorced, or widowed." WAC 162-04-010. See also WAC 162-16-150(2), which provides:
In general, discrimination against an employee or applicant for employment because of (a) what a person's marital status is; (b) who his or her spouse is; or (c) what the spouse does, is an unfair practice because the action is based on the person's marital status.
The applicability of this regulation was at issue in Magula; however, even if literally applied here, the employer's conduct is not proscribed because neither party was married. Magula, 131 Wash.2d at 185-92, 930 P.2d 307 (Sanders, J., dissenting).
WAC 162-16-150 further explains "[s]pouses are within a protected class under the law against discrimination (marital status); [while] other relatives are not. The commission therefore has no role in regulating an employer's treatment of relatives other than spouses, unless discrimination because of sex, race, etc. should be involved." WAC 162-16-150(7). Thus the commission clearly focuses on the legal statuses between parties and does not extend protection to close relatives, let alone social relationships.
Further, while this court held an employer may not discriminate because of the identity of an employee's spouse, Washington Water Power Co., 91 Wash.2d at 69, 586 P.2d 1149, neither the HRC nor this court has implied the identity of one's dating partner receives the same protection as one's spouse under the statute. We held just the opposite in Davis which stated meretricious relationships are not elevated "to the level of marriages for any and all purposes." Davis, 108 Wash.2d at 278-79, 737 P.2d 1262 (citing Norman, 192 Cal.Rptr. 134, 663 P.2d at 908).
The Legislature may draw a reasonable distinction between married persons and those living together who are not married, Davis, 108 Wash.2d at 280, 737 P.2d 1262 (citing Willard v. Department of Social & Health Servs., 91 Wash.2d 759, 763, 592 P.2d 1103 (1979)), and did so in RCW 49.60.180. We may not extend statutory protection beyond statutory text. Fahn, 93 Wash.2d at 383, 610 P.2d 857; Vita Food Prods., Inc., 91 Wash.2d at 134, 587 P.2d 535. The Court of Appeals is reversed and the trial court dismissal is affirmed. Ace is awarded its costs on appeal.
DOLLIVER, SMITH, GUY, JOHNSON, MADSEN and ALEXANDER, JJ., concur.
TALMADGE, Justice, concurring.
While I agree with the majority that Ace Hardware is not guilty of marital status discrimination under RCW 49.60 as a matter of law, I fear the majority's analysis of marital status discrimination may unnecessarily inject confusion into an area of law already settled by this Court in numerous previous cases.
The majority contends RCW 49.60.180 is plain and unambiguous and therefore requires no further construction. Majority op. *93 at 90-91. Nevertheless, the majority then proceeds to construe this "plain and unambiguous" statute in the guise of offering "background factors" which confirm the statute's plain meaning. Majority op. at 91-92. This additional discussion is unnecessary dicta as we do not construe unambiguous statutes. "`Plain words do not require construction.... This court will not construe unambiguous language.'" State v. McCraw, 127 Wash.2d 281, 288, 898 P.2d 838 (1995) (quoting Sidis v. Brodie/Dohrmann, 117 Wash.2d 325, 329, 815 P.2d 781 (1991)).
RCW 49.60.180 is plain and unambiguous in light of our prior analysis of the statute. Because the events of this case all took place prior to the 1993 amendments to RCW 49.60.180,[1] our analysis of RCW 49.60.180 and marital status discrimination is governed by our decisions in Washington Water Power Co. v. Washington State Human Rights Comm'n, 91 Wash.2d 62, 586 P.2d 1149 (1978); Kastanis v. Educational Employees Credit Union, 122 Wash.2d 483, 859 P.2d 26 (1993), 865 P.2d 507 (1994); and Magula v. Benton Franklin Title Co., 131 Wash.2d 171, 930 P.2d 307 (1997), interpreting both the statute as it existed prior to 1993 and the Human Rights Commission's regulations associated with that version of the statute. Strangely, the majority opinion ignores this authority and instead cites a case interpreting an unemployment compensation statute, RCW 50.20.050(4). Majority op. at 90-91 (quoting Davis v. Employment Sec. Dep't, 108 Wash.2d 272, 737 P.2d 1262 (1987)).
Our cases make clear the nature of a cause of action for marital status discrimination under RCW 49.60.180. A plaintiff must prove
"(1) that the employer discriminated against her based on her marital status and (2) that this discrimination was not justified or excused by `business necessity'." Kastanis v. Educational Employees Credit Union, 122 Wash.2d 483, 493, 859 P.2d 26 (1993), amended, [122 Wash.2d 483,] 865 P.2d 507 (1994). Marital status must be a substantial factor in the employer's adverse employment decision. Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 310, 898 P.2d 284 (1995).
Magula, 131 Wash.2d at 176, 930 P.2d 307. As to the definition of marital status itself, we have approved the Human Rights Commission regulation definition in Washington Water Power, Kastanis, and Magula:
In general, discrimination against an employee or applicant for employment because of (a) what a person's marital status is; (b) who his or her spouse is; or (c) what the spouse does, is an unfair practice because the action is based on the person's marital status.
WAC 162-16-150(2).[2] However, in Edwards v. Farmers Ins. Co., 111 Wash.2d 710, 763 P.2d 1226 (1988), we cautioned that where mixed factorsboth a plaintiff's marital status and other factorsare present, a cause of action is stated against an employer only where the adverse employment action turns on marital status.
Turning to the facts in the present case using the tests set forth in RCW 49.60.180 as construed by our cases and WAC 162-16-150(2), Ace Hardware's policy prohibited employment *94 of relatives, cohabitors, or spouses within the same department or job area where one employee could supervise or influence the other's job status and advancement. This policy is substantially narrower than the anti-nepotism policies we addressed in Washington Water Power. The anti-nepotism policies there banned spouses from being employed at the same time by a company, but also permitted the company to refuse to hire a spouse of an employee or to force one of two married employees to terminate their employment. We upheld a Human Rights Commission rule finding such policies to be discriminatory.
In the present case, Ace Hardware's action against Waggoner and Cyr turned as much on their lying about their relationship as it did implementation of the policy. Ultimately, Ace Hardware's policy is based on a fully legitimate concern that people with a personal relationship should not supervise or otherwise influence each other's job situation. Specifically, Ace's policy does not turn on marital status as required by Edwards. Whether Waggoner or Cyr was single, divorced, or married, was not a substantial factor in the employer's adverse employment decision. See Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 898 P.2d 284 (1995).
I would reverse the Court of Appeals and reinstate the trial court's judgment in favor of Ace Hardware.
DURHAM, C.J., concurs.
NOTES
[1] Waggoner and Cyr assert their living arrangement was a temporary arrangement akin to a landlord-tenant relationship.
[2] Although RCW 49.60.180 was amended in 1993, the 1985 version applies to this case. Therefore, the citations to RCW 49.60.180 refer to the statute as applicable in 1985.
[3] See also Prince George's County v. Greenbelt Homes, Inc., 49 Md.App. 314, 431 A.2d 745 (1981) (Cooperative housing development would not accept a couple because they were not married. The court held that only a marriage prescribed by law could change marital status.); Sears v. Ryder Truck Rental, Inc., 596 F.Supp. 1001 (E.D.Mich.1984) (Employer had policy prohibiting co-employee dating. Employee claimed "marital status" discrimination. Although Michigan courts include the identity of one's spouse within marital status, just as in Washington, id. at 1004, such protection did not extend to nonspousal relationships.); Trumbauer v. Group Health Coop. of Puget Sound, 635 F.Supp. 543, 549 (W.D.Wa.1986) (no public policy against preventing discrimination based on a social relationship).
[4] RCW 9.79.120 stated: "Every person who shall lewdly and viciously cohabit with another not the husband or wife of such person, ... shall be guilty of a gross misdemeanor."
[1] The Legislature amended RCW 49.60.180 in 1993. Those amendments are again not before this Court because the events here transpired from 1988 to 1992. Kastanis, 122 Wash.2d at 488 n. 3, 859 P.2d 26; Magula, 131 Wash.2d at 181, 930 P.2d 307. The majority's reference to the 1993 amendments in construing RCW 49.60.180 (Majority op. at 91) is misplaced. As we said in Magula, the Legislature may not change the meaning of a statute retrospectively once the Supreme Court has rendered an opinion on the statute's meaning. Magula, 131 Wash.2d at 182, 930 P.2d 307.
[2] Justice Sanders cites his dissent in Magula as authority for the proposition that Ace Hardware's conduct is proper because "the employer's conduct is not proscribed because neither party was married." Majority op. at 92. I disagree. An unmarried person can state a cause of action under RCW 49.60.180. For example, an unmarried person has a claim against an employer who refuses to hire any divorced person or hires only married people.

The majority focuses unduly on "social relationships" rather than the statutory question of whether the adverse employment decision turned on the question of a person's status as single, divorced, or married, or the identity or conduct of a person's spouse.