# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| CATHERINE THORP, | No.  53680-3-II |
| Appellant, | |
| v. | |
| | UNPUBLISHED OPINION |
| NEW LIFE CHURCH ON THE PENINSULA, | |
| Respondent. | |

SUTTON, A.C.J. — Catherine Thorp sued her former employer, New Life Church on the Peninsula.  She appeals the superior court's summary judgment dismissal of her claims for wrongful termination in violation of public policy under *Thompson*[1] and in violation of the Washington Law Against Discrimination (WLAD).[2]

Catherine[3] argues that the superior court erred by granting New Life's summary judgment dismissal of her claims.  She argues that New Life terminated her employment because she refused to breach a residential lease, and thus, her termination violated clear public policy under *Thompson.*  She also argues that her termination was based on her marital status in violation of the

---

[1] *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984).

[2] Ch. 49.60 RCW.

[3] Because Catherine Thorp shares the same last name as her husband Richard "Tanner" Thorp, we use first names for clarity.

WLAD.  New Life argues that it did not terminate her in violation of a public policy or based on her marital status.[4, 5]

We hold that New Life did not terminate Catherine in violation of a public policy or based on her marital status, and thus, dismissal of her claims was proper.  Thus, we affirm.

FACTS

I.  BACKGROUND FACTS

New Life Church is a Christian church.  The church expects its employees to adhere to its core beliefs and live a life consistent with those beliefs.  One of those beliefs is that sex outside of marriage is sinful.

When New Life hires new employees, it trains them through a process called onboarding. This onboarding includes "training . . . regarding New Life's vision, mission, theological beliefs, and values."  Clerk's Papers (CP) at 213.

New Life hired Catherine as a bookkeeper in 2015.  When she was hired, Catherine agreed to be bound by the church's constitution, bylaws, and employment policies.

In 2016, Catherine separated from her husband, Tanner.  Catherine's co-workers supported this separation.  At the time, Catherine was pregnant with their second child, so she and Tanner decided to postpone filing for dissolution until after the child was born.  Catherine was living alone, so, with Tanner's consent, she invited an old high school friend, Casey Drachenberg, to live

---

[4] Amici, Association of Classical Christian Schools, argues that courts are constitutionally prohibited from assessing a religious organization's faith-based reasons for its employment decisions.

[5] Based on our holding, we do not reach Catherine's or New Life's constitutional argument.

with her to help pay the mortgage. Catherine entered into a written six-month lease agreement with Drachenberg from January 1, 2017 to June 30, 2017. Catherine and Drachenberg's relationship became romantic.

In early 2017, Tanner met with Mark Middleton, a pastor from New Life, in order to discuss Tanner's and Catherine's marital problems. Tanner disclosed Catherine's new relationship with Drachenberg. Following their meeting, Catherine's immediate supervisors, Sara Plumb and Josh Hinman, were notified of Catherine's new relationship, and they met with her the next day to discuss it. Catherine testified that they were hostile toward her, and that other people in the office were gossiping about her.

Catherine did not believe that her actions violated the church's policies and was surprised that New Life and her supervisors did not support her cohabitating relationship. Plumb and Hinman informed Catherine that she could not continue to work at the church if she stayed in the relationship.

On Friday, February 3, 2017, New Life told Catherine that in order to keep her job, she needed to have Drachenberg move out of the house. New Life told Catherine that she had until the following Monday to force Drachenberg to move out of the house. Catherine informed New Life that she had a binding lease, but the church did not relent. When Catherine did not force Drachenberg to move out by the following Monday, New Life granted her an extension to Wednesday and continued to ignore the lease. New Life told Thorp "to move out of [her] house so that the lease would not be broken." CP at 309. It also told her that if she forced Drachenberg to move, the church would help to take care of her and her baby. It offered to help her do so by increasing her pay to offset the mortgage costs and loss of rent.

3

During that time, Catherine received a note from her doctor instructing her to limit stress so as to ensure a healthy pregnancy. New Life chose to not approach the issue regarding Drachenberg again until after Catherine's baby was born.

Catherine's child was born in March, after which Catherine took six weeks of maternity leave. During that leave, Catherine made her relationship with Drachenberg public. New Life terminated Catherine's employment in May after she returned from maternity leave.

## II. PROCEDURAL FACTS

Catherine sued New Life, alleging wrongful termination in violation of public policy for her refusal to break a residential lease with Drachenberg, and in violation of the WLAD based on her marital status.[6] New Life moved for summary judgment dismissal. New Life argued that it did not terminate Catherine in violation of a clear public policy, it was exempt from the WLAD as a non-profit religious organization, and even if WLAD applied, New Life did not terminate Catherine based on her marital status.

The superior court granted New Life's motion and dismissed Catherine's claims. Catherine moved for reconsideration, which the court denied.

Catherine appeals both orders.

## ANALYSIS

## I. STANDARD OF REVIEW

We review summary judgment decisions de novo. *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). Summary judgment is appropriate where the pleadings, admissions

---

[6] Catherine also alleged intentional infliction of emotional distress/outrage, but she does not argue this on appeal.

on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). We consider the evidence and all reasonable inferences in favor of the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

## II. ANALYSIS

### A. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

A common law claim of wrongful discharge in violation of public policy is a narrow exception to the at-will employment doctrine. *See Thompson*, 102 Wn.2d at 232-33. We construe this exception narrowly to guard against frivolous lawsuits. *Gardner v. Loomis Armored Inc.*, 128 Wn.2d 931, 936, 913 P.2d 377 (1996). Generally, wrongful discharge claims are limited to four categories:

> "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing."

*Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 723, 425 P.3d 837 (2018) (quoting *Gardner*, 128 Wn.2d at 936). Relevant here is the first category where employees are terminated for refusing to commit an illegal act. Catherine alleges that New Life terminated her for her refusal to break her residential lease with Drachenberg.

To prevail, Catherine must show that her "'discharge may have been motivated by reasons that contravene a clear mandate of public policy.'" *See Martin*, 191 Wn.2d at 725 (quoting *Thompson*, 102 Wn.2d at 232). "'The question of what constitutes a clear mandate of public policy is one of law' and can be established by prior judicial decisions or constitutional, statutory, or

5

regulatory provisions or schemes." *Martin*, 191 Wn.2d at 725 (quoting *Dicomes v. State*, 113 Wn.2d 612, 617, 782 P.2d 1002 (1989)).

The church did not commit an illegal act in violation of public policy under *Thompson* by terminating Catherine's employment. Although New Life wanted Catherine to break her lease with Drachenberg, which alone could have constituted an illegal act, the church also gave Catherine the option to move out of her home rather than break the lease. Thus, because New Life offered Catherine an option, which was legal, it did not terminate her for failing to do an illegal act, as she claims and thus, she fails to establish a clear violation of public policy under *Thompson*.

We hold that the superior court properly concluded that the *Thompson* test was not met and thus, it did not err by dismissing Catherine's wrongful discharge claim.

B. WASHINGTON LAW AGAINST DISCRIMINATION (WLAD)

Catherine also argues that New Life terminated her due to her marital status in violation of the WLAD, and thus, the superior court erred by dismissing her WLAD claim. We hold that the superior court did not err by dismissing this claim.

Under the WLAD, "marital status" means "the legal status of being married, single, separated, divorced, or widowed." RCW 49.60.040(17). But the church is exempt from the WLAD because it is a religious organization not organized for private profit. RCW 49.60.040(11). Moreover, "cohabitating or dating relationships are not aspects of 'marital status' as these terms are used in the [WLAD]." *Waggoner v. Ace Hardware Corp.*, 134 Wn.2d 748, 750, 953 P.2d 88 (1998). New Life terminated Catherine's employment because she refused to stop cohabitating with Drachenberg, not because she was not married to Drachenberg. Therefore, her claim based

on cohabitation is not a protected category under the WLAD. We hold that the superior court did not err by dismissing her WLAD claim.

## CONCLUSION

We affirm the superior court's summary judgment dismissal of the wrongful discharge in violation of public policy claim and the WLAD claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Sutton, A.C.J._

SUTTON, A.C.J.

We concur:

_Worswick, J._

WORSWICK, J.

_Cruser, J._

CRUSER, J.